[S. F. No. 8377.  In Bank.—September 3, 1919.]

THE NATIONAL BANK OF SAN MATEO (a Corporation), Respondent, v. ST. JOHN WHITNEY, Appellant.

[1] BANKING LAW—COLLECTION OF NOTE—AUTHORITY OF CASHIER.— A bank cashier by virtue of his official position has authority to receive payment of a promissory note due the bank.

[2] ID.—PAYMENT OF NOTE BY CHECK—ORDER OF CASHIER—FRAUDULENT MISAPPROPRIATION—LIABILITY OF BANK.—Where the cashier of a bank in his official capacity demanded payment of a note, and requested that the check given in payment should be made payable to the order of himself instead of to the bank, and he applied the check to his own overdrawn account, the bank must suffer from such fraudulent misappropriation, since the form of payment was immaterial in view of the cashier's authority.

[3] ID.—CONDUCT OF CASHIER—DEMAND FOR PAYMENT OF NOTE—INSUFFICIENT CIRCUMSTANCES TO EXCITE SUSPICION OF MAKER.—The maker of a note payable to a bank was not put on notice that the cashier was trying to defraud the maker or the bank, by the cashier personally demanding payment of the note twenty-four hours after its execution at the office of the maker in a distant city, and requesting that the check given in payment be made out to the cashier personally, where it was represented that the loan was objected to by the bank examiner, and it was known by the maker that the company which had received the money for which the note was given had borrowed up to its limit from the bank.

[4] ID.—ACTION ON NOTE — INSTRUCTION — PAYMENT OF MONEY—PRESUMPTION.—In an action by a bank to recover on a note, which the defendant claimed had been paid by a check payable to plaintiff's cashier, an instruction that the presumption of law is that money paid by one person to another was due the latter was erroneous where the real issue was whether the check was given to the plaintiff by the delivery of the same to its cashier, or to the cashier personally for some other purpose.

[5] ID.—MANNER OF DRAWING CHECK—INSTRUCTION.—In such action, an instruction that the drawing of the check was not in the ordinary course of business between the defendant and the bank was erroneous, as being an instruction on a question of fact.

[6] ID.—DIRECTION AS TO DRAWING OF CHECK—SUSPICION OF MAKER—INSTRUCTION.—In such action, an instruction that cashier's direction to have the check made payable to himself was sufficient notice to put defendant on inquiry as to why the check should thus be

made payable, was objectionable, in view of an instruction that defendant was entitled to rely upon the integrity of the cashier.

[7] ID.—EVIDENCE — WANT OF EXAMINATION BY BANK EXAMINER — IMPROPER TESTIMONY.—Testimony of the directors of the bank in such action, to the effect that no examination was made or was to be made by the bank examiner, should not have been admitted, since the effect of the evidence was merely to prove that the statements made by the cashier to the defendant at the time he demanded payment of the note were false, while the defendant had the right to rely upon such representations by plaintiff's agent.

[8] ID. — COLLECTION OF NOTE — LACK OF EXPRESS AUTHORITY OF CASHIER—IMPROPER TESTIMONY.—Testimony of the directors of the bank to the effect that they had not authorized the cashier to demand payment of the note should not have been admitted in such action, since that authority resulted from his official position.

[9] ID.—PAYMENT OF NOTE TO AGENT—NONPRODUCTION OF NOTE— RISK OF MAKER—WHEN RULE INAPPLICABLE.—The rule that where the payee of a promissory note pays an agent who does not produce the note, the payment is at the risk of the maker, and if such person were not, in fact, entitled to receive payment, the maker must bear the loss, has no application to payment to the cashier of a bank, for he has authority to collect notes due to the bank.

APPEAL from a judgment of the Superior Court of San Mateo County.   George H. Buck, Judge.   Reversed.

The facts are stated in the opinion of the court.

Norman A. Eisner for Appellant.

Walter H. Linforth and Ross & Ross for Respondent.

WILBUR, J.—This is an action upon a promissory note executed on September 13, 1915, to the plaintiff for three thousand dollars.   The case was tried before a jury.   Plaintiff recovered judgment, and defendant appeals.   The sole issue presented to the jury was whether or not the promissory note was paid on September 14, 1915, by a check of the Leslie Salt Refining Company drawn on the Bank of California for three thousand dollars.   This check was issued by the defendant as secretary of the Salt Company, and was received by W. M. Roberts, cashier of the plaintiff.   That it was deposited by him to his credit with the plaintiff bank is admitted.   The plaintiff, in support of its contention that the note was not paid by the check in question, relies upon

the possession of the note, as *prima facie* evidence of its non-payment, and upon the fact that the check was made payable to W. M. Roberts, instead of to the bank, and was a check of the Leslie Salt Refining Company, instead of the defendant, and in support of its claim presented instructions to the jury which were given by the court, to the effect that its possession of the note raised a presumption of its nonpayment; that the giving of the check to W. M. Roberts personally gave rise to the presumption that it was in discharge of an obligation owing to Roberts.

In order to understand fully the assignments of error made by the appellant, it will be necessary to state additional facts. The defendant was a stockholder and the secretary of the Leslie Salt Refining Company. W. M. Roberts, plaintiff's cashier, was a director of the Leslie Salt Refining Company, holding five shares of stock to qualify him as such director. The Salt Company was a borrower from the plaintiff, and having borrowed to the limit of its credit, the defendant negotiated a loan for three thousand dollars on the thirteenth day of September, 1915, and gave his personal note herein sued upon as evidence of such indebtedness. Miss Zula Clements, stenographer and general office assistant of the Leslie Salt Refining Company, testified that on September 14th, William M. Roberts, plaintiff's cashier, called at the office of the Salt Company in the Flatiron Building, in San Francisco, between 3 and 4 o'clock in the afternoon and left a message for the defendant to the effect that the bank examiner had been at the bank and had questioned the loan, and that it was necessary for the bank to have a check for three thousand dollars to take up the note, and that the check was to be made out personally to him and mailed down that night without fail, as he expected the examiner would be there again in the morning; that about 4:30 of that afternoon she gave this message to the defendant; that the check in question for three thousand dollars was made out at that time. The defendant testified that in pursuance of this message he wrote the check in question and mailed it to Mr. Roberts at the bank; that the check was made payable to W. M. Roberts because it was requested in that form, although other checks in payment of moneys borrowed from the plaintiff had been made payable to the plaintiff bank; that neither the defendant nor the Leslie Salt Refining Company owed any-

thing to Mr. Roberts personally, nor was there any debt to Mr. Roberts in which the defendant or the Salt Company was interested, and that the three thousand dollar check was not sent as a loan to Mr. Roberts. Roberts testified that he received the check in question for the purpose of taking up a note of the defendant for the sum of three thousand dollars; that he received the check at the bank; that he had no personal transaction with the defendant, and that the defendant owed him no money and loaned him no money.

It will be observed, then, that the only persons who have any knowledge as to the purpose for which the check in question was given by the defendant, namely, the defendant, his stenographer and Roberts, all testified that it was given in payment of the note herein sued upon and for no other purpose. **[1]** The authority of Roberts, as cashier, to receive the payment of the note must be conceded. (*McBoyle* v. *Union Nat. Bank,* 162 Cal. 277, 279, [122 Pac. 458] ; 1 Morse on Banking, 5th ed., sec. 159, pp. 356, 357; 7 Corpus Juris, sec. 160.) His application of the check to his own overdrawn account was a confessedly fraudulent misappropriation of the check, and the only question involved in the case is as to whether the plaintiff or defendant must suffer by reason of the cashier's dishonesty. If we assume that both the plaintiff and defendant were equally innocent of wrong in connection with the transaction and that the loss resulted by reason of the fraud of the plaintiff's agent in misapplying the proceeds of the check paid to him by the defendant, then, under a familiar principle of the law, the bank for whom Roberts was acting would be required to bear the loss, for "where one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him ought to bear the loss." (*Mundorff* v. *Wickersham,* 63 Pa. St. 89, [3 Am. Rep. 531], cited in *Schultz* v. *McLean,* 93 Cal. 329, 356, [28 Pac. 1053].) Still assuming equal innocence of both parties hereto, the loss resulted from the fact that the plaintiff had in its employment in a position of trust and confidence a dishonest employee, who dishonestly utilized his position of trust and confidence to appropriate three thousand dollars paid to him as such agent for and on behalf of the principal. Where the agent of a depositor of a bank utilized his position of trust and confidence to fraudulently raise certain checks intrusted to him

and thereby secured from the bank larger sums than called for by the checks, it was held that, although such conduct amounted to forgery, and the bank would ordinarily be responsible to the depositor for payment of such forged checks, nevertheless, by reason of the fact that the crime was committed by the depositor's agent, the depositor and not the bank should bear the loss, upon the theory that the principal was liable "for the fraud, torts or other wrongful acts committed by such agent in and as part of such business." (*Otis Elevator Co.* v. *First Nat. Bank of San Francisco,* 163 Cal. 31, 39, [41 L. R. A. (N. S.) 529, 124 Pac. 704, 707].) Similar reasoning would require us to hold the bank liable for the misconduct of its cashier, Roberts.

Plaintiff, however, contends that both parties are not equally innocent in the transaction; that the defendant, by making the check payable to the cashier and by acceding to the unusual demand of the cashier, either had notice of the cashier's fraud, or thus put it within his power to commit the wrong, and that, therefore, the defendant must suffer the loss. In view of the law that the cashier, by virtue of his office, had authority to collect the note, does the fact that he asked for and received a check payable to himself in payment so far inculpate the defendant in the wrongdoing of the cashier as to change the rule? It is undoubtedly true that the form of the check received by Roberts may have enabled him to deposit the same in his own name in the bank without arousing suspicion which might have resulted from the deposit by Roberts to his own account of a check payable to the plaintiff. But this would have been equally true in case the payment had been made by money or by the transfer of negotiable paper by indorsement in blank, or, in short, by any form of payment other than by negotiable paper payable to the order of the plaintiff. It cannot be said, therefore, that the form of the payment facilitated the fraud of the cashier, but, rather, that the payment by a check drawn to the order of the bank might have made it less easy to effectuate the fraud. Even if the check had been payable to the order of the plaintiff, the cashier, by virtue of his agency, would have had authority to indorse the same and thus gain the possession of the proceeds thereof. (*Dyer* v. *Sebrell,* 135 Cal. 597, [67 Pac. 1036]; *McBoyle* v. *Union Nat. Bank,* 162 Cal. 279, [122 Pac. 458].)   [2]   Where, as here, the

duly authorized agent of the plaintiff bank was demanding payment, and such payment was made by a negotiable instrument, the proceeds of which were subsequently secured by the agent, the form of the payment is immaterial. Nor was the fact that the agent requested the payment by check to his own order of any significance, for the reason that he made such request in his capacity as agent for the plaintiff and such request was, in effect, the request of the plaintiff. The defendant was not bound to view with suspicion the conduct of plaintiff's agent.

It is next contended that the facts and circumstances surrounding the payment were such as to put the defendant upon inquiry; in other words, to cause the defendant to suspect the intended fraud of the cashier. It being conceded that the demand for payment of a note twenty-four hours after its execution, at the office of the defendant in San Francisco instead of at the bank, by the cashier personally coming to the office, was unusual and not in the ordinary course of business, the character of the demand was such as might justly allay all suspicion of the defendant. The defendant knew that the Salt Company had borrowed up to its limit from the bank, and that the three thousand dollars represented by the promissory note had been secured by him while an officer of the Salt Company for the Salt Company. Defendant knew that the plaintiff bank was supervised by the bank examiner and, therefore, that the demand of the bank for payment was not, under the circumstances, unreasonable.

[3] Bearing in mind that Roberts came to the defendant for the purpose of demanding payment by the defendant of an obligation owed by defendant to plaintiff for reasons peculiarly applicable to the business of the plaintiff, there was apparently nothing in the transaction to put defendant upon notice that Roberts was trying to defraud either defendant or the bank. The fact that the statements were untrue and were made for the purpose of allaying the suspicion of the defendant concerning the unusual demand was not known to the defendant. Defendant had a right to rely upon the truth of these representations in determining his course of conduct, and such representations must be deemed to have been made by the plaintiff. As the question involved is the fact of payment, the representations are wholly immaterial except as they tended to allay the suspicion which might

be aroused in the defendant by reason of the demand for payment and a request that the check be made to the order of the cashier. Upon the issue of payment it is true that there was a conflict of the testimony arising not only from the fact that the plaintiff had possession of the note, but also because of the fact that the plaintiff was justified in relying upon certain circumstances brought out in the testimony of the defendant concerning the delay of the defendant in notifying the bank that the note had been paid, thus tending, together with other things, to discredit in some measure the testimony of the defendant. If the issue of payment had been submitted to the jury under proper instruction and evidence, the finding of the jury would be binding on this court. But in the light of the foregoing discussion some of the instructions must be held erroneous. For instance, at the request of the plaintiff the court gave the following instruction:

"2. The court instructs you that the presumption of law is that money paid by one person to another was due the latter and therefore in this action if you believe from the evidence that the Leslie Salt Refining Company issued its check payable to W. M. Roberts and delivered or sent said check to said Roberts, then the presumption of law is that said Leslie Salt Refining Company did so because it wished to make the check payable to said Roberts."

The jury were thereby instructed that under the circumstances and proof in the case, in the absence of evidence to the contrary, they were entitled to believe that the check given to Roberts was in payment of an obligation due from the Salt Company to Roberts. The real question in issue was whether or not the check was given to the plaintiff by the delivery of the same to its cashier, or whether it was given to Roberts personally for some other purpose. **[4]** Under these circumstances the instruction of the court, based upon the form of the check, was an erroneous application of the presumption "that money paid by one to another was due to the latter" (Code Civ. Proc., sec. 1963, subd. 7), for the very question involved was, To whom was the money paid?

At the request of the plaintiff the court instructed the jury as follows:

"7. The court instructs you that if you believe from the evidence in this case that W. M. Roberts went to the office of the Leslie Salt Refining Company in San Francisco

and there made a demand for the payment of the note here in question, and directed that any check drawn for the purpose of payment thereof be made payable to him, said W. M. Roberts, and that no other check for the payment of any note to said bank by the defendant, or by said Leslie Salt Refining Company had been made payable to said W. M. Roberts, but had been made payable to the plaintiff, then you are further instructed that the drawing of the check here in favor of W. M. Roberts was not in the ordinary course of business between the defendant and the Salt Company and the bank, and that therefore the direction to have said check made payable to said W. M. Roberts was sufficient notice to put the defendant on inquiry as to why said check should be made payable to said Roberts instead of to the plaintiff bank.''

[5]  This instruction was erroneous, for the reason that it was an instruction upon a question of fact, namely, ''that the drawing of the check here in favor of W. M. Roberts was not in the ordinary course of business between the defendant and the Salt Company and the bank.'' It is true that the evidence showed that the Salt Company usually paid the bank by checks drawn in favor of the bank. But the instance under consideration is the only one in which the defendant paid an obligation of his own. But however that may be, the ordinary course of business so far as involved in this case was the payment to the cashier of the bank and not the form of said payment. It was in the ordinary course of business, so far as this case is concerned, for payments to be made to the cashier of the bank. It was also an instruction which, in effect, informed the jury that ''the direction to have said check made payable to W. M. Roberts was sufficient notice to put the defendant on inquiry as to why said check should be payable to said Roberts instead of to the plaintiff bank.'' As has been above stated, there was no reason why the check should not be made payable to Roberts. The only legal question properly involved by the form of the check given in payment was whether or not the payment was made to Roberts as cashier of the bank or to him in his personal capacity and for his personal benefit. [6]  This instruction is particularly objectionable in view of an instruction given at the request of the defendant, as follows:

CLXXXI Cal.—14

"A bank's client or customer dealing with the cashier of the bank permitted by its directors to have complete control of the business relations with its clients and customers may trust in the integrity of such cashier in transacting its banking business with him when there is nothing in the known state of the affairs of the bank, or of his relation to it, to excite suspicion that he is using his position to the prejudice of his bank."

Under these instructions, upon the admitted facts, the jury must have understood, as a matter of law, that the defendant was not entitled to rely upon the integrity of the cashier, or, in other words, that defendant could not claim the check to be a payment if the cashier misappropriated it, as it is conceded he did. These instructions were erroneous. The question as to whether the suspicions of the defendant were or should have been aroused was a question of fact for the jury. Other instructions were given at defendant's request tending to modify, in some degree, the effect of these instructions, but we cannot say that they cured the basic error of the instruction that defendant's suspicions must necessarily have been aroused by the facts stated in instruction No. 7.

The testimony of the directors of the plaintiff bank was received, over the objection of the defendant, to the effect that they had not authorized the cashier to demand payment of the note in question, and that no examination was made or was to be made by the bank examiner. The effect of this evidence was merely to prove that the statements made by the cashier to the defendant at the time he demanded payment of the note in question were false. The defendant had a right to rely upon the representations of the plaintiff's agent, and the plaintiff could not take advantage of their falsity. It was, therefore, immaterial whether or not such representations were true. **[7]** The evidence, being immaterial, might be regarded as harmless, were it not for the fact that in this case the considerations involved are so evenly balanced that it is difficult to say what the effect of such testimony might be upon the mind of the jury. It showed that the bank was being imposed upon by its own agent, and might, therefore, give the impression to the jury that the bank was to that extent "innocent," while as a matter of law the bank must be deemed to have made such representations. **[8]** Nor was it proper to show that there was no express authority on the

part of Roberts to collect the money. That authority resulted from his official position as cashier, and, in the absence of an express prohibition by the directors, he had authority, as such, to make the collection in question. The evidence should not have been admitted.

The defendant complains of those rulings of the court upon the admissibility of evidence which precluded his proving a transaction by which Roberts sought to reimburse the plaintiff for his wrongdoing. Under proper pleading and offers of proof it would no doubt be permissible for the defendant to show that the plaintiff had received the fruits of the check given by the defendant, if such was the fact. We cannot say, however, that there was error in sustaining the objections to the particular questions that were asked.

[9] Respondent relies upon the rule that where the payee of a promissory note pays an agent who does not produce the note, "the payment is at the risk of the maker of the note, and if such person were not, in fact, entitled to receive payment of the note, the maker of the note must bear the loss, for it is his duty to demand the production of the note before he made payment." The principle, however, has no application here, for the reason that the cashier of a bank has authority to collect notes due to the bank.

In view of the necessity of a new trial it perhaps should be noted that the evidence in this case is not entirely clear as to what became of the credit of three thousand dollars which the cashier secured to himself by the deposit of the check given by the defendant. If such deposit was used by him to reduce an overdraft and was not subsequently withdrawn by the cashier for his own purposes, the bank, of course, having received the benefit of the check could not now collect upon defendant's note upon the theory that the same had not been paid, for it would in fact have received the benefit of the check in the form of a payment upon the indebtedness of the cashier, and the remedy of the bank would be against the cashier and not against the defendant in that event.

The judgment is reversed.

Melvin, J., Shaw, J., Angellotti, C. J., Lawlor, J., and Olney, J., concurred.