## SUDAKOVICH v. CENTRAL BANK OF BINGHAM.

No. 3968.    Decided July 17, 1923.    (218 Pac. 113.)

1. BANKS AND BANKING—DEPOSITORS RETURNING INDORSED CERTIFI-
   CATES OF DEPOSIT TO CASHIER FOR SAFE-KEEPING, AND ACCEPTING
   RECEIPT THEREFOR, HELD NOT TO HAVE DEALT WITH CASHIER IN-
   DIVIDUALLY.    Where certificates of deposit issued by a bank
   were indorsed by the depositors and returned to the cashier
   for safe-keeping, who gave receipts therefor as cashier, and
   thereafter appropriated the funds and converted them to his
   own use, *held* that the bank could not avoid liability to such
   depositors on the ground that they dealt with the cashier in-
   dividually when returning their certificates to him for safe-
   keeping, it having been their custom to deal in that manner on
   former occasions.

2. BANKS AND BANKING—BANK AFTER INSOLVENCY HELD LIABLE
   FOR FUNDS MISAPPROPRIATED BY CASHIER ONLY TO SAME EXTENT
   AS TO OTHER DEPOSITORS.    Where depositors in a bank indorsed
   their certificates of deposit and delivered them for safe-keeping
   to the cashier, who as cashier gave receipts therefor, and
   thereafter misappropriated and converted the funds to his own
   use, *held*, that the bank after insolvency was liable to such
   depositors, not for the full amount of their deposits, but on
   the same basis as to other depositors.

3. BANKS AND BANKING—NEW ORGANIZATION ASSUMING LIABILITIES
   OF INSOLVENT BANK HELD TO HAVE ASSUMED THOSE UNLISTED
   AS WELL AS LISTED AND ACKNOWLEDGED.    Where a new organi-
   zation, in taking over the affairs of an insolvent bank, agreed
   to assume the liabilities of the insolvent bank, *held*, that it
   became liable to every person who might be found to be a de-
   positor, and that its liability was not limited to such liabilities
   as were listed and acknowledged.

Appeal from District Court, Third District, Salt Lake
County; *L. B. Wight*, Judge.

Action by Pete Sudakovich against the Central Bank of
Bingham.  Judgment for plaintiff, and defendant appeals.

AFFIRMED ON CONDITION.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for appellant. ·

*B. L. Liberman,* of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff sues upon four causes of action to recover judgment for the amount of five different deposits alleged to have been made by his assignors in the Citizens' State Bank of Bingham, in Salt Lake county, Utah. The trial court, sitting without a jury, found in favor of the plaintiff as to the first, second, and third causes of action. The fourth cause of action was dismissed, and will not be further considered. Motion for a new trial was overruled, and defendant appeals.

The material facts are as follows: On the 8th day of July, 1913, Sava Koviach deposited in said bank the sum of $1,740.05, for which the bank issued to him a certificate of deposit. On the 9th day of January, 1917, Rade Melich deposited in the bank $700, and on the 14th day of July of the same year $200 more, receiving from the bank in each case a certificate of deposit representing said amount. On the 8th day of July, 1918, Dane Kovich deposited $1,000, for which the bank delivered him a bank book with said amount entered therein. On or about the date last mentioned each of the above-named parties went to the "old country" to participate in the World War. Before leaving Utah, they deposited their certificates of deposit, indorsed, and bank book above referred to, with the cashier of the bank, and took the bank's receipts therefor. The deposits were made for safe-keeping and also to enable the depositors to draw out the money on demand without having to return the certificates from abroad. There is evidence to the effect that the bank had done business in that manner with one or more of the same persons on former occasions. Such appears to have been the circumstances attending the deposits when made by the depositors in July, 1918.

On December, next following, the state bank commissioner

instituted an action against the bank, alleging that it was in an unsound and unsafe condition, and prayed -that a receiver be appointed to take charge of the bank's affairs as provided by law. A receiver was appointed on the same day and immediately entered upon the discharge of his duties. After numerous reports and recommendations relating to the business, and confirmations thereof by the court, the receiver, on the 26th day of February, 1919, presented to the court the following petition, which we quote at length:

"1. That he is the duly appointed, qualified and acting receiver of the Citizens' State Bank of Bingham, Utah.

"2. That as such receiver, he has had charge of said bank for some time last past, and has collected its assets as rapidly as possible and as best he could.

"3. That from the beginning of his receivership your petitioner has felt that it was best for all concerned that said bank be rehabilitated and reorganized rather than that the receiver should continue to wind up its affairs. That the officers of the Utah State National Bank have' been instrumental in organizing a new corporation under the name of Central Bank of Bingham with a capital of $50,000 and a surplus of $20,000. That the said officers of the Utah State National Bank, in organizing said new corporation, have been acting in conjunction with a committee representing the depositors of said defendant bank.

"4. That said corporation Central Bank of Bingham has been incorporated under the laws of the state of Utah, with a capital of $50,000, and has agreed with the unsecured depositors and creditors of the defendant bank to give them certificates of deposit in said new bank corporation totalling 60 per cent. of the amount of their deposits and claims due from the defendant bank payable as follows:  25 per cent. of said 60 per cent. payable on demand; 25 per cent. of said 60 per cent. payable in three months; 25 per cent. of said 60 per cent. payable in six months; 25 per cent. of said 60 per cent. payable in nine months, with interest on deferred payments at the rate of 4 per cent. per annum, and also to exchange for 40 per cent. of said unsecured deposits and claims 49 per cent. of the capital stock of said new corporation, in such proportions as each deposit or claim bears to the total sum of unsecured deposits and claims, and your petitioner is advised and therefore alleges that said offer is agreeable and satisfactory to the committee representing said depositors and claim holders.

"5. Your petitioner further shows that he has submitted the matters and things herein set forth to the state bank commissioner, and the· same has his approval.

"Wherefore your petitioner prays for an order of this court that he be authorized and directed to sell, transfer, set over, indorse, and deliver, to the said Central Bank of Bingham all the property and assets of every kind, nature, and description which he has in his possession or under his control as such receiver, in consideration and under the terms and conditions hereinbefore set out."

In response to said petition the court made and entered the following order:

"Upon reading the petition of D. C. Dunbar, receiver of the Citizens' State Bank, upon file herein, and upon the sworn testimony introduced at the hearing, and the court being fully advised in the premises, and upon motion, it is ordered, adjudged and decreed that the said receiver be and he is hereby ordered and directed to sell, transfer, set over, indorse and deliver to Central Bank of Bingham, upon the terms by it bid, all the property and assets of every kind, nature, and description which he has in his possession or under his control as such receiver, and upon his having done so and upon filing a receipt in this court from said Central Bank of Bingham, and upon report and hearing, an order may be entered releasing and discharging him as receiver and releasing his bond."

On the 21st day of October, 1919, the receiver represented to the court that he had fully complied with the foregoing order, and requested that he be discharged, and that his bonds be released. On November 8th following the petition was granted, and the receiver discharged.

The foregoing constitutes the main features of the receivership proceedings. The recitals in the several orders made by the court indicate that hearings were duly had and that sworn testimony formed the basis of the orders made and entered.

The assignors of plaintiff did not participate in the settlement referred to in the receivership proceedings, nor were they recognized by the defendant bank as depositors of the bank or in any manner entitled to relief. Having been entirely ignored and their claims disallowed by the defendant bank, the plaintiff, as assignee, instituted this action to determine their rights.

The evidence shows without dispute that the money in question was delivered by plaintiff's assignors to Q. B. Kelly, cashier of the Citizens' State Bank, that certificates of de-

posit were issued by Kelly, as cashier of the bank, and that the certificates were then indorsed by said depositors and returned to Kelly, as cashier, for safe-keeping, who, in turn, gave receipts therefor, as cashier of the bank. The evidence also shows that the same thing had been done on former occasions. The undisputed evidence also shows that afterwards, during the same month (July, 1918), without the knowledge or consent of the depositors, Kelly, the cashier, misappropriated the funds and converted the same to his own use. All of these facts are sworn to by Kelly himself, and are not matters of inference or conjecture.

Appellant contends that under this state of facts it must be concluded that the depositors dealt with Kelly, as Kelly personally, and not with Kelly as cashier of the Citizens' State Bank. Such contention, in the opinion of the writer, is untenable from any point of view. When Kelly, as cashier of the bank, accepted the depositors' money and as cashier delivered to them certificates of deposit or bank book, with the amount of the deposit entered therein (as in the case of Kovich), and when they in turn indorsed the certificates and returned them and the bank book to Kelly for safe-keeping, taking his receipt therefor as cashier of the bank, there is nothing in the entire transaction to suggest or indicate that they were dealing with Kelly personally and not with the bank. There is nothing to suggest that Kelly was acting out-· side of his authority as cashier, especially in view of the evidence that he had done the same thing on former occasions in dealing with the same parties.

Appellant cites as authority the case of *Jones* v. *First National Bank of Lincoln,* 3 Neb. (Unof.) 73, 90 N. W. 912, and quotes therefrom an excerpt from *School District* v. *De Weese* (C. C.) 100 Fed. 705.

In the first case referred to, the assistant cashier of the bank knew of a certain deposit in the bank of which the depositor was entirely ignorant. With the view of obtaining possession of the money, the assistant cashier disclosed the fact to an attorney at law, who entered into some sort of negotiations with the depositor and fraudulently induced him to sign a check by which the money could be drawn.

The attorney cashed the check and paid the assistant cashier part of the proceeds. The depositor sued the bank. The trial court directed a verdict for the defendant, and the Supreme Court affirmed the judgment. We see no analogy between that case, and the case at bar. The assistant cashier in that case departed entirely from his duty as cashier and gave to an outside party information which enabled that party to swindle the depositor. Let us suppose another case which, in our opinion, presents a closer analogy. Suppose that A. deposits with the cashier a sum of money, to be placed to his credit on the books of the bank, and the cashier, instead of entering the amount to the credit of the depositor, converts the same to his own use. Such conversion would be entirely outside the authority of the cashier, yet no one would contend that the bank would not be liable. There can be no reasonable doubt that these illiterate foreigners thought and understood they were dealing with the bank, as a bank, and not with Kelly as an individual.

The other case referred to, cited by appellant, is also inapplicable to the instant case and is not of sufficient importance to warrant extended review.

In our opinion the consequences to the banking business of the country would prove extremely disastrous if the courts could be induced to hold that a bank is not responsible to a depositor for money or funds deposited with it, as was done in the case at bar. It would seem unnecessary to cite authorities in support of these views.

Respondent refers to one case of recent date, apparently well considered, which forcibly illustrates what we believe to be a just and reasonable rule concerning the liability of a bank for its cashier's tortious conduct. We refer to the case of *National Bank of San Mateo* v. *Whitney*, 181 Cal. 202, 183 Pac. 789, 8 A. L. R. 298. The defendant was secretary of a corporation which had exhausted its credit with the bank. In these circumstances the defendant negotiated a loan from the bank for $3,000, and gave therefor his personal promissory note. On the next day, after the note was given, the assistant cashier of the bank called at the office of the defendant's company and left a message for defendant

to the effect that the bank examiner had been at the bank and questioned the loan, and that it was necessary that the bank have a check for the amount that night without fail. The assistant cashier also requested that the check be made personally to him, and be mailed to him at once, as the bank examiner was expected the next morning. The defendant executed the check as secretary of the company, payable personally to the assistant cashier, and mailed it to him as ·requested. 'The assistant cashier cashed the check, placed the amount to his credit in the bank and left the defendant's note unpaid. The bank sued to recover the amount of the note. The court, after stating the facts, at page 205 of 181 Cal., at page 791 of 183 Pac. (8 A. L. R. 298), referring to the conduct of the cashier, said:

"His application of the check to his own overdrawn account was a confessedly fraudulent misappropriation of the check, and the only question involved in the case is as to whether the plaintiff or defendant must suffer by reason of the cashier's dishonesty. If we assume ʼthat both the plaintiff and defendant were equally innocent of wrong in connection with the transaction, and that the loss resulted by reason of the fraud of the plaintiff's agent in misapplying the proceeds of the check paid to him by the defendant, then, under a familiar principle of the law, the bank, for whom Roberts was acting, would be required to bear the loss, for 'where one of two innocent persons must suffer by the fraud ʼor negligence of a third, whichever of the two has accredited him ought to bear the loss.' *Mundorff* v. *Wickersham*, 63 Pa. St. 89, 3 Am. Rep. 531, cited in *Schultz* v. *McLean*, 93 Cal. 329, 356, 28 Pac. 1053."

There ought not be any question as to the correctness of the above rule and that it should be enforced in the case at bar.

While we have no reasonable doubt as to the liability of the defendant bank in the instant case, the extent of the liability presents a more serious question. The trial court found in favor of the plaintiff for the full amount of the deposit, and interest, aggregating in all the sum of $4,418.08.

We are not prepared to say from the record before the court that the Citizens' State Bank of Bingham, at .the time its assets were taken over by the defendant, was in a solvent condition or that it had sufficient assets to pay, all its creditors in full. Indeed, the evidence is quite conclusive that

the bank was insolvent, and that upon liquidation its creditors would be subject to a substantial loss. It is true that the cashier, Kelly, as a witness for plaintiff, testified that when the bank went into the hands of the receiver it had assets to the amount of about $500,000 and owed the depositors something over $400,000. What it was owing other creditors does not definitely appear, but the cashier stated the other obligations amounted to but little. In another portion of his testimony, however, he stated that he had contributed $13,000 and another stockholder had contributed $20,000, and when asked why that was done he said, in effect, that it was necessary to reinforce the assets of the bank in order to pay the depositors 60 per cent. of their deposits. On cross-examination, when asked if the bank was not insolvent, his answer was, ''It was proven to be insolvent by the state bank examiner.'' This, together with the fact that the committee representing the depositors and Central Bank of Bingham, with the approval of the receiver and the state bank commissioner, finally agreed to settle on the basis of 60 per cent. in money to the depositors and a certain amount of capital stock in the Central Bank amounting to only 5.4 cents on the dollar additional, renders it quite conclusive that the bank, was insolvent when the settlement was made and the depositors compelled to take a loss. Besides this, the settlement was approved by the court after a formal hearing and consideration of the facts. If, then, the Citizens' Bank, when the settlement was made between its depositors and the Central Bank, was unable to pay its depositors in full, upon what principle of justice and square-dealing can it be contended that plaintiff's assignors should be paid in full? We fail to find in the record before us any evidence of fraud in the proceedings connected with or leading up to the settlement between the depositors and the Central Bank. As far as the record discloses, the whole proceeding seems to have been an honest effort on the part of those participating in the settlement to rehabilitate and reorganize the defunct bank, and place it on its feet under a new name and management.

In these circumstances, while we are of opinion that the

defendant is liable to the plaintiff's assignors on the theory that such assignors were depositors in the Citizens' Bank, we are not inclined to hold that such liability is anything more than a pro rata liability as measured by the actual value of the assets of the bank at the time the settlement was made with the other depositors.

The authorities cited by respondent, in support of his contention that the judgment of the court should be affirmed without modification, are far from convincing. We cite them for what they are worth, without further comment except to say that a careful reading will disclose that many of them support the view we have expressed, while none of them supports the view that a plaintiff in such case should be paid in full, notwithstanding the assets are insufficient to treat all alike. The authorities relied on are Thompson on Corporations (2d Ed.) § 6082; *Skirvin Operating Co.* v. *Southwestern Electric Co.* (Okl. Sup.) 174 Pac. 1069, 15 A. L. R. 1109; *Jackson* v. *Knights and Ladies of the Orient et al.*, 101 Kan. 383, 466, 167 Pac. 1046; *Quinn* v. *American Bankers' Assurance Co.*, 183 Mo. App. 8, 165 S. W. 823; *Sweeney* v. *Heap O'Brien Mining Co.*, 194 Mo. App. 140, 186 S. W. 739; *Crozier* v. *Menzies Shoe Co.*, 103 Kan. 565, 175 Pac. 276; *Alberger Condenser Co.* v. *United Water, Gas & Electric Co.*, 87 Kan. 843, 126 Pac. 1087; *Wesco Sup. Co.* v. *El Dorado L. & W. Co.*, 107 Ark. 424, 155 S. W. 518.

The authorities cited by appellant are illuminating upon the question as to the liability of defendant by reason of it having taken over all the assets of the Citizens' Bank, but to establish that proposition no authorities were necessary, for the very reason that that obligation was expressly assumed by defendant, at least to the extent specified in the terms of the settlement.

We do not agree with appellant's contention that the defendant assumed only such liabilities as were listed and acknowledged. There was no limitation expressed in the offer of defendant and it must have been understood by the receiver, the bank commissioner, and the court as well, that the settlement included every person who might be found to be a depositor in the Citizens' Bank.

Whether depositors who did not participate in the settlement would be bound thereby is another and different question and one which, in our opinion, is unnecessary to be determined in this proceeding.

It is reasonably clear to the mind of the court that if plaintiff, for the benefit of his assignors, desires to become a party to the settlement confirmed in the receivership proceeding he has the option to do so, for the terms of the settlement are broad enough to include every depositor.

It is not necessary to determine other questions presented. They are either immaterial or too technical to deserve serious consideration.

It is therefore ordered that respondent have 30 days from the date of receiving notice of this opinion within which to elect whether or not he will accept the terms of the settlement made and confirmed in the receivership proceeding by which he will be placed on an equal footing with other depositors of the Citizens' State Bank.

If respondent so elects, the judgment of the trial court will be modified accordingly, and affirmed without costs; otherwise the judgment will be reversed at respondent's costs, and appellant granted a new trial.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J., did not participate herein.