[Civ. No. 14634.   Second Dist., Div. One.   Sept. 28, 1945.]

CONDOR CORPORATION (a Corporation), Appellant, v. FELIX CUNNINGHAM et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Loeb & Loeb, Dwight W. Stephenson and Norman Newmark for Appellant.

Hugo A. Steinmeyer and G. L. Berrey for Respondent.

WHITE, J.—Plaintiff commenced this action to recover from defendants the sum of $29,350.87, allegedly due as the proceeds of certain checks, payable to plaintiff, and collected by defendant bank from the drawee bank upon the alleged unauthorized endorsement by defendant Cunningham, and to which endorsee the proceeds of said checks were paid.

We do not deem it necessary to a determination of the questions presented upon this appeal to set forth in minute detail the factual background upon which this litigation rests, and shall therefore epitomize from the record what we consider to be the salient facts necessary for consideration in the light of the questions of law with which we are here concerned. In that regard, it will suffice to say that plaintiff was a corporation, organized for the purpose of taking over the assets of another corporation which was in bankruptcy. Defendant Felix Cunningham was attorney for plaintiff corporation and, at the time of the transactions involved in this action, was also its secretary and treasurer. The office of plaintiff corporation was maintained at the law offices of defendant Cunningham, where the corporate seal and all records, books and files of the corporation were kept under the personal supervision and control of said Cunningham. The only other officer of the corporation was Simeon Aller, its president. In addition to the president, the corporate board of directors consisted of three other members. There were no permanent employees of plaintiff corporation, but from time to time the services of a bookkeeper in Cunningham's office were engaged. Meetings of the directors were not held at any particular place and usually occurred at a luncheon in some restaurant, at which defendant Cunningham would from time to time report to the directors "the amount of money received from different sources."

The assets of plaintiff corporation were interests in some

twenty motion pictures which were being distributed by other corporations, and also certain claims against several motion picture distributing companies. Plaintiff corporation was not engaged in the business of producing or distributing any motion pictures, and its sole business was to liquidate the foregoing assets and distribute the proceeds to its stockholders, who were of two classes. Class "A" stockholders were the unsecured creditors of the aforementioned bankrupt corporation whose assets were taken over by plaintiff corporation. Class "B" stockholders consisted of the former stockholders of the bankrupt corporation.

All checks payable to plaintiff corporation came to defendant Cunningham's office and were received by him. As to the preparation and control of the minutes of meetings of plaintiff corporation, Cunningham, when testifying as a witness, was asked "The minute book was kept entirely, was it, under your control and supervision?" to which he replied "That is right."

On March 1, 1940, plaintiff corporation by resolution established an account at the South Hollywood Branch of defendant bank, and such resolution provided for the withdrawal of corporate funds by checks signed jointly by President Aller and defendant Cunningham, as secretary and treasurer. Defendant Cunningham testified that, at the same meeting on March 1, 1940, he was "authorized and directed . . . to collect corporate moneys and to put the same into the corporate bank account, and to carry on all the work necessary to maintain the Condor Corporation bank account and make it perform its functions."

For some years prior to the organization of plaintiff corporation, defendant Cunningham, in his own name, maintained two accounts at the Melrose and Irving Branch of defendant bank, one of which he characterized as "a general law office trust account," and which he used only "to deposit funds which came into my hands as trustee," such as collections wherein the checks were made payable to him and "I would deduct a fee or something like that and forward the balance to the client." The other was his personal account.

The confessed duplicity of defendant Cunningham commenced during February, 1940, and, up to the time his perfidy was discovered on Christmas Eve, 1941, he had misappropriated a total of $29,350.87 belonging to plaintiff corporation of which he was secretary and treasurer. This amount

was represented by over 100 checks, all of which were made payable to plaintiff corporation and were by Cunningham endorsed ''Condor Corporation by Felix Cunningham, Secretary and Treasurer.'' Bearing such endorsements the checks were either cashed or presented by Cunningham to the Melrose and Irving Branch of defendant bank for deposit in his ''trustee'' or ''personal'' account, were received by defendant bank, credited to Cunningham's account and disbursed through the medium of his personal checks drawn on the aforesaid accounts maintained by him personally. The proceeds from all of the checks deposited in his ''trustee'' or ''personal'' accounts were used by Cunningham for his personal benefit and none for the benefit of plaintiff corporation, except that, subsequent to the discovery of his defalcation, he did transfer from his two accounts by way of reimbursement the sum of $18,115.10, which leaves the amount sought to be recovered by plaintiff corporation in this action the sum of $11,235.77, with interest from December 24, 1941.

From the record it appears that from February, 1940, defendant bank continued to receive from defendant Cunningham the aforesaid checks payable to plaintiff corporation and endorsed as above set forth until some time in May, when he presented for deposit a check for $9,000.10, or in June, when he tendered one of the checks in an amount of $12,495.14. Upon that occasion, which was after Cunningham had deposited some 20 checks payable to plaintiff corporation in one or the other of his said accounts, when he presented the check for deposit, he was referred to Charles Griffiths, Manager of the Branch of defendant bank where Cunningham maintained his aforesaid accounts. Defendant Cunningham stated to the branch manager that it was his desire to deposit the check in his ''trustee'' account and that the teller desired a ''clearance'' from Manager Griffiths before he would accept the check for deposit to defendant Cunningham's account. The bank manager informed defendant Cunningham that it would be necessary to have on file at the bank authority from plaintiff corporation empowering Cunningham to endorse checks made payable to the corporation and then deposit them in his account. Defendant Cunningham advised the bank manager that a resolution had been adopted authorizing him to do that very thing and that he would file a certified copy of such resolution with the bank. Following the aforesaid interview, defendant Cunningham, according to his testimony, ''looked in the minutes and did not see such a resolution, *so I prepared*

*or drafted a resolution which contained an authority to endorse, and certified it, and sent it down to the bank."* (Emphasis added.) The unauthorized resolution lodged with defendant bank reads as follows:

"RESOLVED FURTHER that Felix M. Cunningham be, and he hereby is elected treasurer of this Corporation to hold office until the first meeting of the Board of Directors after the next annual meeting of the stockholders or until his successor shall have been elected and shall have qualified.

"RESOLVED FURTHER that Felix M. Cunningham, the treasurer of this Corporation, and Simeon Aller the president of this Corporation be, and they each hereby are, authorized to execute and acknowledge all documents pertaining to the business of this Corporation, *to endorse checks made payable to this Corporation,* to collect funds or properties belonging to this Corporation, and to do all other things and take all other necessary steps on behalf of this Corporation as are not otherwise provided for in the By-laws of this Corporation or by the Board of Directors." (Emphasis added.)

The record definitely reflects the fact that the aforesaid resolution was not at any time adopted by the board of directors of plaintiff corporation, and defendant Cunningham at no time advised the board of directors, or any member thereof, that he had prepared and filed with the bank such a resolution. While it must be assumed that the board of directors of plaintiff corporation knew that Cunningham was endorsing checks, because such instruments could not be collected and deposited to the credit of plaintiff corporation without endorsement, the evidence does indicate that the board of directors did not know that defendant Cunningham was endorsing some checks and depositing them in his own two accounts.

The default of defendant Felix Cunningham, for failure to answer plaintiff's complaint, was duly entered and his stipulation for judgment on the cross-complaint lodged against him by defendant bank having been filed, judgment was rendered against him in favor of plaintiff corporation for the sum of $20,350.77, with interest, and in favor of defendant Bank of America against cross-defendant Cunningham in the sum of $1,188.58. Insofar as the judgment affected by this appeal is concerned, it was in favor of plaintiff and against defendant Bank of America for $1,103.60, and was arrived at upon evidence which showed that defendant Cunningham from time to time deposited Condor Corporation checks to his

individual account while it was overdrawn. Sometimes he included funds of his own in the same deposit with Condor checks. At times Cunningham's funds, other than Condor Corporation checks, were sufficient to cover the overdraft, and at other times part of the Condor funds went into the overdraft. The aforesaid sum of $1,103.60 is the aggregate amount of Condor funds that were applied on overdrafts after first applying Cunningham's individual funds deposited at the same time. Upon the authority of a line of cases holding that, although an innocent party may receive a negotiable instrument under such circumstances from a trustee for cash or deposit to his account, such person cannot receive the instrument *in payment of a debt of the trustee to such third person* without being affected by any defect in the trustee's title, judgment was given against defendant bank for such amounts.

Defendant bank has not appealed from the judgment rendered against it, but plaintiff corporation appeals from the limited judgment in its favor on the ground that its recovery against defendant bank should have been for the sum of $11,235.77, which represents the full amount of corporate funds embezzled by its secretary and treasurer, defendant Cunningham, and which were deposited by him in his own private accounts with defendant bank and thereafter withdrawn and used for his own use and benefit.

The trial court found that defendant bank was indebted to plaintiff corporation in the sum of $1,103.60 with interest in the amount of $84.90, or a total of $1,188.58, under plaintiff's first, third, fourth and fifth causes of action. As to the remainder of plaintiff's complaint, the court found that certain negotiable instruments were drawn by three persons in favor of plaintiff or endorsed to plaintiff; that said checks were drawn on banks other than defendant Bank of America; that plaintiff was entitled to the possession of said checks prior to the time when they were unlawfully converted by defendant Cunningham and by him negotiated to the defendant bank. It was further found that defendant Cunningham cashed or deposited each check and delivered the same to defendant Bank of America, save and except some six checks totaling $75.27, which he collected through another bank; that defendant Cunningham appropriated all of the money so received to his own use and benefit.

The court further found that it was not true that defendant Cunningham took possession of said checks or any of them without right or authority, or that he endorsed each or

any of said checks without authority, or that he cashed or deposited or delivered to the defendant bank any of said checks without authority; but that it is true that without authority he appropriated all of the money thereby received to his own use and benefit and that said acts took place as to each check at or about the date thereof; that the total value of the checks so converted by the defendant Cunningham was and is the sum of $29,350.87; that demand has been made on the defendant Cunningham for repayment of said sum, and that no part thereof has been paid except the sum of $18,-115.10, and that there is due and owing from the defendant Cunningham to the plaintiff the sum of $11,235.77 and interest thereon from December 24, 1941.

The court further found that at all times mentioned in the complaint Cunningham was secretary of the plaintiff corporation and as such secretary had custody of the seal of said corporation and it was within the scope of the authority of said Cunningham to state to persons interested and inquiring what resolutions, minutes and by-laws had been adopted by the board of directors of said corporation; that prior to the time when the checks mentioned in the complaint were endorsed and delivered by Cunningham to the defendant, he as the secretary to the plaintiff corporation delivered to the defendant bank a copy of a resolution purporting to have been adopted by the board of directors of said corporation, which resolution purported to state that the said Cunningham was authorized to endorse checks payable to plaintiff; that the said copy was certified by Cunningham as secretary of said corporation to be a true and correct copy of a resolution theretofore adopted by the plaintiff corporation, and the said certificate of Cunningham was attested with the seal of the corporation; that the defendant believed that such resolution had in fact been duly adopted by said corporation and relied on said resolution and certificate of said Cunningham in accepting the checks endorsed by Cunningham; that no such resolution had been adopted by the corporation but Cunningham was in fact authorized by said corporation to endorse and collect checks payable to the said corporation as hereinabove set forth.

Two main questions are presented upon this appeal, the first of which is whether defendant Cunningham, the faithless secretary and treasurer of defendant corporation, had authority to endorse the checks here in question, and secondly, were the

facts and circumstances here present such that defendant bank can be held as a participant in Cunningham's misappropriation of funds on the ground that the circumstances surrounding the check transactions were sufficient to generate a knowledge on the part of the bank or give notice to it of the infirmity of the checks. That Cunningham's title for the purposes he used the checks was defective cannot be questioned, because he negotiated them "in breach of faith" and "under such circumstances as amount to a fraud" (Civ. Code, § 3136). But, unless defendant bank had notice of such infirmity or defect, as such notice is defined by section 3137 of the Civil Code, then it follows that the depositary was clothed with the right of a holder in due course and held the checks free from any defect of title of prior parties (Civ. Code, § 3138).

As to whether defendant Cunningham had authority to endorse the checks the query must be answered in the affirmative. He was in full control of the affairs of the corporation, whose main business was the collection of moneys due it from motion picture distributors. While the by-laws contained no provisions defining the duties of Cunningham as secretary and treasurer and did not authorize him to endorse checks, nevertheless there is evidence that all checks payable to plaintiff corporation came to defendant Cunningham and the board of directors was aware of the fact that he was endorsing such checks, because endorsement was necessary on checks that he honestly deposited in the corporation's bank account. In addition to this, Cunningham testified that he had authority to endorse the checks and there was no denial thereof. Obviously, defendant Cunningham was bound, as between him and the corporation which employed him, to endorse the checks only for the purpose of depositing the amounts thereof to the credit of plaintiff corporation, but can it be said that defendant bank had knowledge or notice of any such instructions or obligation upon the part of Cunningham or that the bank was in possession of such facts that its action in accepting checks endorsed by Cunningham for deposit to his individual accounts amounted to bad faith? (Civ. Code, § 3137.) There was no showing that the checks here in question were endorsed any differently from the checks which were deposited to the credit of defendant corporation. Appellant cites numerous cases but in all of such cases it appears that the endorsement of the fiduciary was either a forgery or unauthorized. And when a signature is forged, or

made without authority of the person whose signature it purports to be, it is wholly inoperative (Civ. Code, § 3104). We are persuaded that the trial court was justified in finding that Cunningham was authorized to endorse checks belonging to plaintiff corporation. ▮ In the instant action, we are also confronted with the fact that when defendant bank requested of Cunningham that he file with it evidence of his authority to endorse and collect upon checks belonging to plaintiff corporation, he forwarded to the bank a resolution properly certified and bearing the corporate seal, by which resolution Cunningham was empowered to endorse the corporation's checks and collect the money therefrom. True, this resolution was spurious, but his act in certifying the resolution as having been adopted by the corporate body was within the scope of his authority as secretary of the corporation and was binding upon the latter (*National Bank of San Mateo* v. *Whitney*, 181 Cal. 202, 207 [183 P. 789, 8 A.L.R. 298]). ▮ Under all the facts and circumstances here present, it cannot be said that defendant bank accepted the checks under such circumstances as ought to have put an ordinary man on inquiry to ascertain the true facts. We are impressed that it was not negligence or bad faith upon the part of defendant bank, but the misplaced confidence on the part of plaintiff corporation in its secretary and treasurer Cunningham that made the wrong possible. Such being the case, under familiar principles of law "where one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him ought to bear the loss" (*National Bank of San Mateo* v. *Whitney, supra,* at page 205). Therefore, the court was correct in holding that defendant bank took the checks as a holder in due course.

The weight of authority supports the holding that before defendant bank can be held liable, in view of Cunningham's authority to endorse plaintiff corporation's checks, there must be a showing of circumstances that would reasonably support the inference that Cunningham was committing a breach of his trust. Until such circumstances occur, the bank is not burdened with the duty or obligation to institute an inquiry into the conduct of its depositor in order to protect those for whom such depositor holds the money or checks, but between whom and the bank there is no privity. Our views herein stated find support in *Santa Marina Co.* v. *Canadian Bank*

*of Commerce,* 254 F. 391 [165 C.C.A. 611]; Civ. Code, §§ 3106, 3107, 3133, 3136, 3137, 3138, 3140, 3090; *Southern Trust & Commerce Bank* v. *San Diego Savings Bank,* 60 Cal. App. 215 [212 P. 385]; *United States Fid. & Guar. Co.* v. *First National Bank,* 18 Cal.App. 437 [123 P. 352]; *White-Dulany Co.* v. *Craigmont State Bank,* 48 Idaho 100 [279 P. 621]; *Maryland Casualty Co.* v. *City National Bank,* 29 F.2d 662; *Rice* v. *Peoples Savings Bank,* 140 Wash. 20 [247 P. 1009]; *Quanah, A. & P. Ry. Co.* v. *Wichita State Bank,* 127 Tex. 407 [93 S.W.2d 701, 106 A.L.R. 821].

In the case of *Walsh* v. *American Trust Co.,* 7 Cal.App.2d 654 [47 P.2d 323], upon which appellant places great reliance, the court expressly stated at page 659 that the only direct testimony on the issue of the endorser's right or authority to endorse the check in question, if believed, established the lack of authority to so endorse. As hereinbefore pointed out no such situation exists in the case at bar. Nothing in the last cited case militates against our holding that where the evidence justified the finding of the court that the endorsements were made by Cunningham with authority, the defendant bank became a holder in due course and took the instruments free from any defect of title of the fraudulent agent or trustee. Other cases cited by appellant are as readily distinguishable from the case with which we are here concerned, or are predicated upon a rule adopted in some jurisdiction which is contrary to the weight of authority supporting the principle enunciated herein, that, when trust funds are deposited in the individual name of a trustee or fiduciary, the bank incurs no liability in accepting the checks for deposit unless it has actual knowledge of the infirmity or defect, or the circumstances are such that the bank is chargeable with knowledge that the depositor is violating his trust, or that the action of the bank in taking the check for deposit occurred under circumstances which amounted to bad faith (Civ. Code, § 3137).

Since the questioned findings are supported by the evidence and the findings support the judgment, it is ordered that the judgment appealed from be and it is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 24, 1945, and appellant's petition for a hearing by the Supreme Court was denied November 26, 1945. Edmonds, J., and Traynor, J., voted for a hearing.