[Civ. No. 5093.   Third Appellate District.—July 6, 1934.]

C. O. NORDIN, Appellant, v. EAGLE ROCK STATE BANK (a Corporation) et al., Respondents.

Holbrook, Taylor, Tarr & Horton and Joseph K. Horton for Appellant.

Goudge, Robinson & Hughes and David A. Sondel for Respondents.

THOMPSON, J.—This is an action for money had and received. From a judgment in favor of defendants, plaintiff has appealed.

The record is voluminous and contains much immaterial matter. However, from the record we glean the following material facts:

In August, 1926, defendant Eagle Rock State Bank, hereinafter for convenience referred to as Eagle Rock Bank, and defendant Monterey Park Commercial and Savings Bank, hereinafter referred to as Monterey Park Bank, were each state banking corporations, organized under the laws of the state of California. Eagle Rock Bank was located at Eagle Rock, Los Angeles County, and Monterey Park Bank at Monterey Park in the same county. For some time prior to August, 1926, and up to about October 5, 1926, one I. Klein was the president of both said banks. Plaintiff Nordin was, prior to and during August, 1926, a depositor in Eagle Rock Bank, but was not at any time a depositor in or patron of Monterey Park Bank.

On August 10, 1926, by appointment arranged by telephone, at the instance of Nordin, I. Klein met Nordin in the city of Los Angeles, and received from Nordin checks aggregating the sum of $7,400. This amount was made up of one check for $6,000 written by Nordin at the time on the Bank of Italy, being plaintiff's exhibit number six, as follows:

"Head office San Francisco. No. ——
16–104 Broadway Branch, Broadway at Seventh Street,
BANK OF ITALY, Los Angeles, Cal. 8–10–1926
Pay to the order of Eagle Rock State Bank..$6000.00
Six thousand ..................... Dollars.
(Signed) C. O. NORDIN
(Indorsements)
Paid 8–11–26. Eagle Rock State Bank, By I. Klein, Pres.''

And one check for $1,000, plaintiff's exhibit number nine, as follows:

"THE FARMERS AND MERCHANTS NATIONAL BANK, 16-1

of Los Angeles.                    No. 177175.

Los Angeles, Cal. Aug. 10, 1926.

Pay to the order of: Chas. K. Atlass......$1000.00

One Thousand Dollars Exactly..........Dollars.

(Signature illegible), Cashier

W. J. Cassin, Accountant

CASHIERS CHECK

PAID 8-12-26"

(Indorsements)

"Chas. R. Atlass. Pay to order of C. O. Nordin, C. O. Nordin.

"For deposit in Bank to order of C. O'. Nordin.

"Pay to the order of Any Bank or Banker, all prior Endorsements guaranteed. Aug. 11, 1926. Monterey Park Commercial and Savings Bank. 90-1066."

The record does not show the check or checks which made up the balance of $400 included in the total amount, nor does it appear what disposition Klein made of the remaining $400 in checks. On receiving the checks from Nordin, I. Klein signed and gave him a receipt or credit statement, plaintiff's exhibit number twenty-one, as follows:

"Los Angeles, 8-10-26.

"Received of C. O. Nordin for deposit in Eagle Rock State Bank checks totaling $7400.00 Seventy-four hundred dollars. E. R. S. Bank per Pres. *I. Klein.*"

On several occasions prior to August 10, 1926, Nordin had, after getting in touch with Klein, by telephone or otherwise, delivered to Klein outside of the bank, checks to be deposited to the credit of Nordin in the Eagle Rock Bank and received from him receipts similar to plaintiff's exhibit number twenty-one. On each of those prior transactions Klein had made the deposits in Eagle Rock Bank as per his instructions from Nordin. No part of the $7,400 delivered by Nordin to Klein on said date above mentioned was ever deposited to the credit of Nordin. The cashier of Eagle Rock Bank, one J. S. Abbott, knew that Klein on many occasions brought deposits to said bank for depositors and that other employees

of the bank also brought into the bank deposits for customers of the bank. The plaintiff testified that prior to the time plaintiff entrusted the president of Eagle Rock State Bank with the checks for deposit in that bank to his credit, he had talked with the cashier of that bank who corroborated the practice of the bank to accept deposits outside of the bank by the officers thereof, and he had seen a sign displayed in the bank notifying its customers that ''For the convenience of the depositors we will call for your deposits.''

Klein took Nordin's $6,000 check drawn on the Bank of Italy to the Bank of Italy, indorsed it ''Eagle Rock State Bank, by I. Klein, President'', and exchanged it for a Bank of Italy cashier's check, payable to Eagle Rock State Bank, in the sum of $6,000. The $1,000 check, when delivered to Klein by Nordin, bore the indorsement: ''Pay to the order of C. O. Nordin, C. O. Nordin. For deposit in bank to order of C. O. Nordin.'' Klein took the $1,000 check to the Monterey Park Bank and exchanged it for $1,000 in currency. He then went to the Eagle Rock Bank and presented the $1,000 in currency and the cashier's check on the Eagle Rock Bank for $6,000 and requested a cashier's check by the Eagle Rock Bank for $7,000, payable to his wife Rebecca Klein. The president then misappropriated the $7,000 to his own use. He absconded with the money.

The plaintiff brought suit against the Eagle Rock State Bank and the Monterey Park Commercial and Savings Bank, jointly, for money had and received by those banks in the sum of $7,400 and interest thereon at the rate of seven per cent per annum from August 10, 1926, which is the date upon which the money was misappropriated by the president of both banks. The court adopted findings in accordance with the foregoing statement of facts, except that it was found that the Eagle Rock Bank did not authorize its officers to follow the custom of collecting money from its depositors outside of the bank. On the theory that the general rule of law requires the funds of a depositor to be actually paid into the bank to hold it liable to the owner thereof on the principle of the creation of a relationship of debtor and creditor, the court further found that the president of the banks, in taking charge of the plaintiff's money outside of the bank thereby became the agent of the plaintiff and thus absolved the bank of liability for the misappropriation of

the funds. A judgment was accordingly rendered to the effect that the plaintiff take nothing in this action. A motion for new trial was denied. From that judgment the plaintiff has appealed. He also gave notice of appeal from the order denying plaintiff's motion for new trial.

■ It has been repeatedly held that an appeal does not lie under the provisions of section 963 of the Code of Civil Procedure from an order denying a motion for new trial. (*Erreca* v. *Los Banos Cotton Gins, Inc.*, 96 Cal. App. 783 [274 Pac. 1041]; *Marston* v. *Pickwick Stages, Inc.*, 78 Cal. App. 526 [248 Pac. 930]; *Jedlicka* v. *Atwell Land Co.*, 93 Cal. App. 455 [269 Pac. 665, 270 Pac. 232].) The attempt to appeal from that order is therefore ineffectual.

The by-laws of the Eagle Rock Bank authorized its president to execute contracts, sign all checks, notes or drafts and all other documents or instruments in the name and on behalf of the corporation.

The appellant contends that the court's finding to the effect that the Eagle Rock Bank did not establish a custom authorizing its officers to collect the funds of its depositors outside of the bank is not supported by the evidence; that the undisputed record establishes the fact that that custom did prevail, and that the practice constituted such officers its agents for that purpose, making the Eagle Rock Bank liable to the plaintiff for the entire $7,400 and interest thereon, on account of its misappropriation by the president; that the $1,000 check which was especially indorsed "Pay to order of C. O. Nordin, C. O. Nordin. *For deposit in Bank to order of C. O. Nordin*", gave notice to the Monterey Park Bank, where the check was cashed by the president of that bank, that it was to be credited to the plaintiff's account, rendering that bank liable to the owner for the last-mentioned sum; that with respect to the $6,000 check, regardless of the existence of a custom of the Eagle Rock Bank authorizing its officers to collect funds for deposit outside of the bank, that check, together with the proceeds of the $1,000 check, actually did reach the bank and was mingled with the funds of that bank, after which the president of the bank became the agent and trustee of the bank in the performance of his official duty to see that it was properly credited to the account of the plaintiff, and that the irregular act of the cashier drawing a cashier's

check for $7,000 payable to the wife of the president, renders the bank liable to the plaintiff for the subsequent embezzlement of the $7,000 by its president.

■ Regarding the custom of the bank authorizing its officers to collect funds from its customers for deposit outside of the bank, while several other witnesses did testify to having paid funds to the officers of the bank outside of the bank for deposit therein and the plaintiff made several previous deposits through the president in that same manner and the plaintiff testified that the cashier, in a conversation with him, corroborated the existence of that custom, and that he personally saw the notice displayed in the bank that "For the convenience of the depositors we will call for your deposits," it is nevertheless true that the finding of the court to the effect that the custom did not exist, is supported by the evidence of Coughlin, the teller of the bank, and by Long, a director of the bank. Since there is a conflict of evidence regarding the custom, we must therefore assume the practice did not exist and that the bank did not authorize its officers to collect deposits outside of the bank.

■ While it is true that a bank is ordinarily liable to its customer on the principle of a relationship of debtor and creditor only when money is actually deposited in the bank with officers who are authorized to accept the deposit, there can be no doubt that the bank will be responsible for deposits which are collected by such officers outside of the bank when that procedure is duly authorized by the bank. That authorization may be established by proof that such practice was followed with knowledge of the bank either express or implied. The prior usage of the bank in that regard may be controlling as to its liability. (*Carpy* v. *Dowdell*, 115 Cal. 677 [47 Pac. 695].) ■ It has been held that knowledge of the usage of the bank need not necessarily be extended to all customers of the bank. Under some circumstances it may be sufficient to bind the bank if, with the knowledge of the directing officers of the bank, it had previously dealt with the particular depositor in that manner. It is said in 1 Morse on Banks and Banking (6th ed.), page 31, section 9, that: "A course of dealing between the bank and a single person may establish obligations as to its continuance, and, if nothing is provided to the con-

trary, will govern subsequent transactions, of the same nature, between them.''

While the record in the present case contains persuasive evidence of the practice of the Eagle Rock Bank to collect deposits outside of the bank, still there is substantial evidence to support the finding of the court that it was not done with the knowledge or consent of the bank. Therefore, on appeal we must assume that usage did not prevail.

In the absence of authorization on the part of the bank for its officers to collect funds outside of the bank for deposit therein, we must assume that the president became the agent of the plaintiff for the purpose of conveying the money to the actual custody of the bank, and that the $400 which never did reach the bank, but which was evidently misappropriated by the president before it reached the bank, is merely a personal liability of the president and not a liability of the bank. The plaintiff is therefore not entitled to judgment against the defendant banks, or either of them, for this sum of $400 which was misappropriated by the president.

Conceding the rule of banking law relied upon by the respondents in this case to be as announced in the text of Morse on Banks and Banking (5th ed.), page 381, to the effect that ordinarily, in the absence of a custom of the bank to the contrary, ''Where money is offered for credit on a deposit account it is clear that it should not be accepted away from the bank. The bank does not contemplate any such method of receiving deposits, but has provided an entirely different system,'' and recognizing the justice of the further rule declared in the text of Paton's Digest, 1926, volume 1, page 296, paragraph 1778, that ''Until the money [which is paid to an officer of the bank outside of the bank] *is actually put in the bank's possession* at the bank, the cashier is agent of the depositor and not of the bank, and the bank is not liable if the money is not in fact paid over to it,'' these principles are readily distinguishable from the facts of the present case with relation to the two checks of $6,000 and $1,000, the proceeds of which did actually reach the Eagle Rock Bank.

While it is true that, in the absence of authorization of a bank for its officers to collect deposits from customers outside of the bank, such officers become the agents of the

depositors for the purpose of conveying the funds to the custody of the bank, nevertheless, in good conscience and reason, that agency will cease when the money actually reaches the bank and is mingled with its funds. The officers thereafter become the agents of the bank, in the fulfillment of their trust as such officers, to see that the money is properly credited to the accounts of the depositors according to their directions. As the Supreme Court says in the case of *Modesto Lumber Co.* v. *Wylde,* 217 Cal. 421, at page 425 [19 Pac. (2d) 238]: ''The agency conferred upon the contractor by entrusting the check to him *was merely that of a messenger.''* ■ After the money actually reaches the bank, as it did in the present case, it was a breach of trust for which the bank is liable, for the president to thereafter misappropriate the funds. When the money actually reached the bank it became the duty of the president, as such, to properly credit it to the account of the plaintiff. There is no doubt the president of a bank has the authority to receive money for deposit. It is said in Magee on Banks and Banking (2d ed.), page 287, section 176: ''The president of a bank, by inherent power, has the right to receive a deposit for the bank.'' (2 Michie on Banks and Banking, p. 889, sec. 121 [3].) ■ In the present case, the president actually did convey the $7,000 belonging to the plaintiff to the Eagle Rock Bank and deposited it therein. The $6,000 check was made payable to that bank. The $1,000 check had been cashed, but the proceeds were deposited with the other check. The funds represented by those two checks must therefore be deemed to have been thereby mingled with the funds of the bank, and the relationship of debtor and creditor was immediately established between the bank and the plaintiff. Thereafter, the cashier, at the request of the president performed the irregular act of drawing the bank's check for $7,000 in favor of the wife of Mr. Klein. Klein received that cashier's check and absconded with the money of the bank. The cashier knew that transaction was irregular. He merely carried out the instructions of the president on account of his confidence in him as the chief officer of the bank. In response to the court's question, ''Well did you follow your general and usual custom in the transaction of this business that you did in connection with this seven thousand dollar check?'' the cashier

replied, "Well, if it had been an outside party, it would have probably been different, but Mr. Klein was the president of the bank."

We are of the opinion that since the money of the plaintiff, in so far as the $7,000 is concerned, actually reached the Eagle Rock Bank and was deposited therein by the president, the requirement of the law to the effect that the money of a depositor shall actually be placed in the bank, was fulfilled, and the subsequent transaction by means of which the president persuaded the cashier to draw a check upon the bank for $7,000 of its money, which he appropriated to his own use, was a violation of the trust by an authorized agent of the bank, which makes the bank liable to the plaintiff in a suit for money had and received. (*National Bank of San Mateo* v. *Whitney,* 181 Cal. 202 [183 Pac. 789, 8 A. L. R. 298] ; *Sudakovich* v. *Central Bank of Bingham,* 62 Utah, 24 [218 Pac. 113].)

One other problem remains to be determined on this appeal. The appellant contends that the Monterey Park Commercial and Savings Bank is also liable to the plaintiff to the extent of the $1,000 check for the reason that it wrongfully cashed that check by paying to the president of that institution the amount thereof in spite of the fact that the check was especially indorsed by the plaintiff with the restriction requiring the payment thereof to be deposited in the bank to his account. It is claimed this limited indorsement was notice to the bank that the title to the check had not passed to the holder thereof. At the time the check was presented to the Monterey Park Bank, of which Klein was then the president, it was clearly indorsed by Nordin, who was the owner thereof, "for deposit in bank". The check reads :

"THE FARMERS AND MERCHANTS NATIONAL BANK, 16–1

of Los Angeles. No. 177175.

Los Angeles, Cal. Aug. 10, 1926.

Pay to the order of: Chas. K. Atlass........$1000.00

One Thousand Dollars Exactly........Dollars.

(Signature illegible), Cashier

W. J. Cassin, Accountant.

CASHIERS CHECK
PAID 8–12–26"

594

(Indorsements)

"Chas. R. Atlass. Pay to order of C. O. Nordin, C. O. Nordin.

"For deposit in Bank to order of C. O. Nordin.

"Pay to the order of Any Bank or Banker, all prior Endorsements guaranteed. Aug. 11, 1926. Monterey Park Commercial and Savings Bank. 90–1066."

Clearly this indorsement was notice to the Monterey Park Bank, to which it was presented by the president of that bank, that it was payable only to C. O. Nordin for credit to his account. It was notice to the bank that further negotiation of the check was specifically prohibited by the owner thereof. Section 3117 of the Civil Code provides that:

"An indorsement is restrictive, which either—

"(1) Prohibits the further negotiation of the instrument; or

"(2) Constitutes the indorsee the agent of the indorser; or

"(3) Vests the title in the indorsee in trust for or to the use of some other person."

This check was not indorsed payable to Klein. Even if it had been so indorsed with the special limitation clearly implied by the language employed, that it was "for deposit in bank to order of C. O. Nordin", it would be notice to the bank that the holder or indorsee was a mere agent of the indorser for the purpose of carrying out the specific direction to deposit it in the bank to the credit of Nordin. It is said in 8 Corpus Juris, page 365, section 544:

"A restrictive indorsement operates as notice to all persons that the indorser has not parted with his title to the instrument, and did not intend to transfer it or its proceeds to the indorsee [or holder], but constituted him merely his agent for collection; and any subsequent holder taking the instrument from the indorsee takes it as trustee of the real owner, and will be liable to him for the instrument or its proceeds when collected."

The cashing of this check appears to have been a clear violation of the language of the indorsement on this $1,000 check, which limited its payment to the sole purpose of depositing the proceeds thereof in the bank. We are therefore of the opinion that the Monterey Park Bank was placed

on notice by the language of the special indorsement that Klein was not the owner of the check, and that that bank became liable to the plaintiff by paying that amount to the president of the bank. The evidence is uncontradicted that the money was subsequently paid to the Monterey Park Bank from the account of the drawer thereof in the Farmers and Merchants National Bank.

The judgment is reversed with directions to the trial court to render judgment against the Eagle Rock State Bank for the sum of $6,000, with interest at the rate of seven per cent per annum from August 10, 1926, and against both the Eagle Rock State Bank and the Monterey Park Commercial and Savings Bank, jointly, for the further sum of $1,000 and interest at the rate of seven per cent per annum from the last-mentioned date.

Rankin, J., *pro tem.*, and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 4, 1934, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 30, 1934.