[Civ. No. 30568.    Second Dist., Div. One.    June 1, 1967.]

JACK C. CAMERON et al., Plaintiffs and Appellants, v. SECURITY FIRST NATIONAL BANK, Defendant and Respondent.

Kindel & Anderson and Malcolm George Smith for Plaintiffs and Appellants.

Voegelin, Barton, Harris & Callister, E. Talbot Callister and Robert A. Smith for Defendant and Respondent.

WOOD, P. J.—Plaintiffs Jack C. Cameron and Barbara D. Cameron, who were the payees of a check for $9,832.43, wrote the words ''For Deposit Only'' on the back of the check and signed their names thereunder. Vivienne D. Sherwood, who was Mr. Cameron's bookkeeper, took the check to defendant bank and presented it for deposit in the account of Amber Construction Company, a company in which Mr. Cameron had been an officer and director, and the bank accepted the check for deposit in that account. About seven months thereafter, plaintiffs claimed that the check should not have been deposited in said account, and demanded that the bank reimburse them in the amount of the check. The bank did not comply therewith, and the plaintiffs commenced this action for damages for the alleged failure of defendant to honor the restrictive indorsement on the check. The court determined that defendant was not negligent and did not breach any contract of deposit or other duty owed to plaintiffs; that Vivienne D. Sherwood was the agent of Mr. Cameron and had ostensible authority to deposit the check in said account; that plaintiffs were negligent and such negligence was the proximate cause of such deposit; that plaintiffs, by reason of their failure to object to such deposit after having received a state-

ment from defendant showing such deposit, are estopped to maintain the herein action; and plaintiffs, by reason of their conduct in placing Vivienne D. Sherwood in a position which enabled her to make such deposits, must bear responsibility therefor, the bank being an innocent party. The judgment was that plaintiffs take nothing by their complaint. They appeal from the judgment.

Appellants contend that the bank is liable to plaintiffs for defendant's alleged negligence and breach of contract in failing to honor the restrictive indorsement on the check; and that the court erred in making the following findings: that Miss Sherwood had ostensible authority to deposit the check in the Amber account; that defendant was not negligent; that plaintiffs were negligent; that plaintiffs are estopped to maintain this action; and that the bank was an innocent party.

At the time the check transaction occurred (January 1963), and for several years prior thereto, defendant maintained a branch bank at the Malaga Cove Plaza, a commercial center in Palos Verdes. During that time, plaintiff Jack C. Cameron had a business office in the Plaza where he operated several businesses, including P. V. Investment Company, Jack Cameron Enterprises, J. C. C. Enterprises, Inc., and Amber Construction Company. The names Cameron & Hess, and Amber Construction Company, were on the front door of the office.

From 1959 to 1962 Amber Construction Company was owned by Jack Cameron, Max Harber, and Kenny Beaubein. In 1962, Beaubein sold his stock in that company to Amber. Thereafter Cameron and Harber were the only stockholders in Amber, and Cameron was a director and president of Amber. Amber was engaged in construction work and held a contractor's license which designated Cameron as responsible managing officer. Several persons were employed at the office, including Vivienne D. Sherwood, who worked as a bookkeeper for plaintiff and for some of the businesses (including Amber).

Amber Construction Company maintained a commercial account, No. 006-783, at the branch bank in the Plaza. When the account was opened in 1959, a signature card showed that the signatures of Jack C. Cameron, president, and Harber and Beaubein were authorized in connection with that account. The last signature card regarding the account, prior to January 1963 (the time of the deposit involved here), was filed with the bank in January 1962 and it showed that the signatures of Jack C. Cameron, president, Harber, Vivienne Sherwood, and Harry Hess were authorized in connection with the

account. Mr. and Mrs. Cameron, as joint tenants, also maintained a savings account at the Plaza branch of the bank. Mr. Cameron maintained a commercial account in his name at the Crenshaw and Santa Barbara branch of defendant bank; and he also maintained an account at that branch in the name P. V. Investment Company.

Miss Sherwood was employed by Mr. Cameron in 1961 to render services at the Plaza office as a bookkeeper, receptionist, and general office worker. Her salary was paid by P. V. Investment Company, but her duties included bookkeeping for the Camerons personally, and for P. V. Investment Company, Amber Construction Company, J. C. C. Enterprises, and Jack Cameron Enterprises. Her duties also included the making of bank deposits in accounts maintained by the Camerons personally, and in accounts maintained in the names of said business enterprises.

During the years 1961 to 1963, Miss Sherwood made deposits, more than once a week, in the Plaza branch of the bank. In general, it was the business practice of Mr. Cameron to take title to land in his name, or jointly with his wife, and then one of the companies would build houses on the land. Checks in connection with the construction projects would come into the office payable to the Camerons or to one of the companies. Miss Sherwood would make deposit slips, including inter-branch deposit slips, and would take the checks and deposit slips to the Plaza branch for deposit in the various accounts. She made a "great many" deposits at the Plaza branch during those years and became acquainted with several officers of said bank, including Mr. Theiss, the assistant manager, and Mr. Bagley, the manager.

Mr. Theiss and Mr. Bagley were also personal acquaintances of Mr. Cameron, who had done business with the bank approximately eight years. Mr. Cameron's father also was a customer of the bank. By reason of financial statements which Mr. Jack C. Cameron had filed with the bank, the officers knew that he, was a wealthy man. They knew that he did business under the names of various companies, and that he maintained accounts with the Crenshaw branch bank. They also knew that Miss Sherwood was making deposits at the Plaza branch on behalf of Mr. Cameron in the Amber account and that, by means of inter-branch deposits at the Plaza branch, she was making deposits in the accounts at the Crenshaw branch.

One of Mr. Theiss' duties as assistant manager of the Plaza

branch bank was to "keep track" of "overdrafts" on accounts. In late December 1962 and early January 1963 an overdraft condition existed in the Amber account. Mr. Theiss told Mr. Bagley that he was permitting the overdraft condition because Mr. Cameron was the principal on that account; and he showed the signature card (with Mr. Cameron's signature thereon as president) to Mr. Bagley. Those overdrafts subsequently were "cured" (by deposits), but, on January 18, 1963, another overdraft occurred. Mr. Theiss then telephoned Miss Sherwood and asked her when funds would be available to put into the Amber account. (He had made similar calls to her with reference to previous overdrafts.) Miss Sherwood said that "they were expecting a check to take care of it." A few days later (January 21) Mr. Theiss again telephoned Miss Sherwood about the overdraft, and she said that "they were waiting for a check to come in that would take care of" the overdraft. On January 23, Mr. Theiss telephoned Miss Sherwood again and asked whether the check had arrived. She replied that the check had arrived, but she was waiting for Barbara Cameron to come into the office to indorse the check, and that as soon as Mrs. Cameron indorsed it, she (Miss Sherwood) would bring it to the bank. Mr. Theiss said that he would be waiting for the check. At that time Miss Sherwood had a check payable to Jack C. Cameron and Barbara D. Cameron, dated January 22, 1963, in the amount of $9,832.43.

That afternoon (January 23), about 2:55 p.m. (bank closing time was 3 p.m.), Miss Sherwood came to the bank and stood in line at a teller's window. She had the check, on the back of which were the words "For Deposit Only" and also the signatures of Jack C. Cameron and Barbara D. Cameron. Those words and the signatures were in black ink, and there was a space of approximately one and one-quarter inches between the words "For Deposit Only" and the signatures. In that space, Miss Sherwood had written, in red ink, the number "006-783," which was the number of Amber's account at the bank. Miss Sherwood also had prepared a deposit slip for deposit of the check in the Amber account.

Mr. Theiss saw Miss Sherwood standing in the line at the teller's window and asked her whether the check she had brought was large enough to cover the overdraft. She replied in the affirmative, and showed the $9,832.43 check and the deposit slip to Mr. Theiss. After examining the check and the slip, he said: "This appears like Mr. Cameron may have

wanted this to go into his own account.'' Miss Sherwood said, ''No''—that Mr. Cameron had instructed her that ''this was to go into the Amber Construction account.'' Mr. Theiss then asked why Amber's rubber indorsement stamp was not on the check and Miss Sherwood replied that Mrs. Cameron had just come into the office to sign the check and that she (Miss Sherwood) had been unable to find the stamp and she had rushed to the bank in order to arrive there before the bank closed. Mr. Theiss then telephoned Mr. Cameron's office at the Plaza to inquire whether it would be better for Mr. Cameron's records if the Amber indorsement were placed on the check. No one answered the telephone, and Miss Sherwood told him (Mr. Theiss) that Mr. and Mrs. Cameron had just left the office. Mr. Theiss then accepted the check for deposit in the Amber account.

The check was sufficient in amount to pay the overdraft. In March and May 1963, other overdrafts occurred in the Amber account, but were ''cured'' by deposits.

Miss Sherwood testified that she deposited a great many checks for the Camerons and the business enterprises and she had no recollection of the transaction whereby she made out the deposit slip and deposited the check involved herein. Mr. Cameron testified that he could not recall receiving the check or his wife's signing the check, and he could not recall giving the check to Miss Sherwood. He also testified that he could not recall having given Miss Sherwood any instructions with reference to depositing the check; and that he had sold all of his stock in Amber, and had resigned as an officer and director of Amber, in November 1962.

In August 1963, about seven months after the check had been deposited in the Amber account, Mr. Cameron discovered that the deposit had been made in that account, but, according to his understanding, the deposit should have been made in his personal account (at the Crenshaw branch bank). Mr. Cameron had received a bank statement regarding said peronal account for the month of January 1963, but he did not check to ascertain whether the deposit appeared in the statement, although he knew by reason of the many statements he had received from the bank previously, of the *caveat* printed on the statement warning depositors to report errors therein to the bank within 10 days after receiving the statement. During the seven-month period, he did not ask Miss Sherwood whether, or in what manner, the deposit had been made, and

made no inquiry at the bank with reference to the deposit. He did not ask Miss Sherwood, during that period, for a copy of the deposit slip. (It was Miss Sherwood's practice to make out inter-branch deposit slips in triplicate, and retain one copy for the use of Mr. Cameron's office.)

On August 26, 1963, plaintiffs made a written demand upon defendant bank for reimbursement in the amount of the check; and, when the bank did not comply with the demand, plaintiffs commenced this action.

Appellants contend, as above stated, that the bank is liable to plaintiffs for defendant's alleged negligence and breach of contract in failing to honor the restrictive indorsement on the check; and that the court erred in making findings: that Miss Sherwood had ostensible authority to deposit the check in the Amber account; that plaintiffs were negligent; and that plaintiffs are estopped to maintain this action.

Appellants assert that Miss Sherwood's duty, "pursuant to standing instructions," was to take the check to the Plaza branch of defendant bank and make an inter-branch deposit so that the proceeds from the check would be deposited in the commercial account of Jack C. Cameron at the Crenshaw branch of defendant bank. They further assert that the indorsement, "For Deposit Only," was a restrictive indorsement which limited the bank to accepting the check for deposit in said account of Jack C. Cameron; that Miss Sherwood did not have actual or ostensible authority to insert the number of the Amber account in the space between the indorsement and signatures, or to make out a deposit slip for deposit of the check in the Amber account; that by reason of the restrictive indorsement and the appearance of said account number added to the indorsement, the bank had a duty to investigate further the scope of Miss Sherwood's authority and to contact Mr. Cameron with reference thereto; that by failing to so investigate, the bank was negligent and breached its deposit agreement with plaintiffs; that plaintiffs were not negligent; and, even if plaintiffs were negligent, the bank had the last clear chance to avoid the loss, and "policy considerations" require that the bank bear the loss.

As shown above, Miss Sherwood, who had been the bookkeeper for Mr. Cameron and several of his business enterprises (including Amber) at the Plaza office for two years prior to this check transaction, had on many occasions during that time made deposit slips and deposited checks which had come into the office and were payable to the Camerons and to

said business enterprises. She had met officers of the bank who knew of Mr. Cameron's various enterprises and his accounts with the bank, and who knew Miss Sherwood's position at the office of Cameron and Amber. When overdrafts occurred in the Amber account in late December 1962 and early January 1963, officers of the bank noted that Mr. Cameron's signature, as president of Amber, was on the most recent signature card which had been filed with the bank. One of the officers telephoned the Cameron office and told Miss Sherwood of the overdrafts. Thereafter, those overdrafts were cured by deposits. When another overdraft occurred on January 18, the officer telephoned the Cameron office, and Miss Sherwood told him that "they" were awaiting a check which would take care of the overdraft. A similar conversation occurred on January 21. On January 23, the officer again telephoned the office and Miss Sherwood said that the check had arrived and she would bring it to the bank as soon as Mrs. Cameron came to the office and signed it. Later that day, about five minutes before the bank's closing time, Miss Sherwood brought the check to the bank with a deposit slip which she had prepared for deposit of the check in the Amber account. The words "For Deposit Only" were on the back of the check, and the signatures of Mr. and Mrs. Cameron, on the back of the check, were more than one inch below those words. Although there is some question as to the restrictive nature of the words "For Deposit" on commercial paper (see 58 Harv. L. Rev. 1182, *Remarks on Restrictive Indorsements*, at pp. 1220-1221), such words are a common form of restrictive endorsement. (See 1 Witkin, Summary of Cal. Law (1960) Negotiable Instruments, § 24, p. 590.) If the words "For Deposit Only" should be regarded as restricting the bank to collecting the proceeds of the check for deposit, it is to be noted that there is no direction in said indorsement as to the account in which the proceeds were to be deposited. (Cf. *Nordin* v. *Eagle Rock State Bank*, 139 Cal.App. 584, 589 [34 P.2d 490], wherein the endorsement was "For deposit in Bank to order of C. O. Nordin"; and *Christian* v. *California Bank*, 30 Cal.2d 421, 422 [182 P.2d 554], wherein the endorsement was "Pay to order of 303 Bank of America 303 Trust and Savings Association S & R Produce Co.") Furthermore, Miss Sherwood, who had inserted the Amber account number in the space between the indorsement and the signatures, told the bank officer, who inquired whether she had brought the check to cover the overdraft, that the Camerons wanted the check to

be deposited in the Amber account. Pursuant to further inquiries by the bank officer, Miss Sherwood repeated that statement and said that after Mrs. Cameron had come into the office and signed the check, she (Miss Sherwood) could not find Amber's indorsement stamp and had rushed to the bank to deposit the check before the bank closed. After those explanations, the officer telephoned the Cameron office, but the Camerons were not there. The officer then accepted the check for deposit in the Amber account as requested by Miss Sherwood.

Section 3137 of the Civil Code, which was in effect in 1963 when the bank accepted the check for deposit, provided as follows: "To constitute notice of an infirmity in the instrument or defect in the title of a person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

As stated in *Christian* v. *California Bank, supra,* 30 Cal.2d 421, 425 [182 P.2d 554]: "Under this section [Civ. Code, § 3137] it is the well-settled rule that 'mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. . . . [T]his rule is subject to the qualification that "where the circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction, such indorsee is charged with knowledge." ' "

Appellants' claims with reference to the bank's duty to plaintiffs raised an issue "whether the bank acted in good faith, that is, whether at the time of acceptance of the check it had knowledge of facts which should have put it on inquiry." (*Christian* v. *California Bank, supra,* p. 425.)

The conduct of the bank's officer in accepting the check for deposit was reasonable in the circumstances under which the check was presented, and he made reasonable inquiries with reference to the manner in which it was indorsed for deposit. The evidence supports the court's determinations that Miss Sherwood had ostensible authority to deposit the check in the Amber account; that defendant was not negli-

gent; that plaintiffs were negligent; that the bank was an innocent party; and that plaintiffs, by reason of their conduct in placing Miss Sherwood in a position which enabled her to make such deposit, must bear responsibility therefor.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.