**In re Irene Vazquez NUSOR, Debtor.**

**Robin A. PARKHILL, Appellant,**

v.

**Irene Vazquez NUSOR, Appellee.**

**BAP No. CC–89–1961–VJO.**
**Bankruptcy No. LAX 88–52662–SB.**
**Adv. No. LAX 88–01768–SB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 19, 1990.

Decided Jan. 22, 1991.

L.J. Buckley, Laguna Niguel, Cal., for appellant Robin A. Parkhill.

Ray B. Bowen, Jr., Tarzana, Cal., for appellee Irene Vazquez Nusor.

Before VOLINN, JONES and OLLASON, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Appellant Robin A. Parkhill ("Parkhill") appeals from the trial court's summary judgment finding that a note signed by debtor-appellee Irene Vazquez Nusor ("Nusor") was not a negotiable instrument and avoiding Parkhill's lien on real property. Parkhill argues that the note was a negotiable instrument under the California Uniform Commercial Code ("Commercial Code"), that she is a holder in due course, and that she is insulated from Nusor's defenses against the note's enforceability.

We affirm the judgment below in most respects but on different grounds, and we reverse in part.

## FACTS

In the fall of 1987, having fallen behind in her mortgage payments, appellee Nusor received advertisements from a company called Best Financial Consultants ("Best") offering attractive refinancing opportunities. At that time, Nusor's home at 241

Norumbega Drive, Monrovia, California was encumbered by liens held by the California Federal Savings and Loan (for $15,-079.91) and Zenith Home Loan (for $68,-000).

On October 14, 1987, Nusor attended a meeting with Best representatives at a McDonalds restaurant who told her that Best would arrange for a complete refinancing of her home in the amount of about $98,-000, pay off the two existing lienholders, and provide Nusor with an additional $5,000 in spending money. In consideration for these services, Nusor was told that she would owe Best only $4,000. She agreed to the arrangement and proceeded to sign a fee agreement and a promissory note entitled "Installment Note." Nusor "believes" that she signed a blank form document and that the note's typewritten terms, as they now appear in the record, were filled in later by Best representatives.[1] The note provides that Best will loan her a total sum of $14,986.61 payable in full in sixty days (on December 23, 1987) at the annual interest rate of 18%.

On November 13, 1987, Nusor went to a second meeting with Best representatives, and signed a "short form deed of trust and assignment of rents." This deed indicated that it was secured by a promissory note in the amount of $14,986.61. On December 2, 1987, Best assigned the note to appellant Parkhill for the slightly discounted price of $13,812.19. It appears that Parkhill bought the note without actual notice of the misrepresentations made to Nusor by Best.

Nusor received only a single payment of $5,997.25 from Best to one of her lienholders, Zenith Home Loan. Best never refinanced Nusor's home or fulfilled its other promises. For Best, however, the deal was very profitable: at a cost of just under $6,000, it received almost $14,000 from Parkhill, thereby more than doubling its investment in a period of about two weeks.

---

**1.** The record contains, at Appellant's EOR, Ex. 7, two loan disclosure statements also signed by Nusor with typewritten dates of October 23, 1987. These documents contain the same terms as those which appear in the Installment Note. Nusor does not state when she signed these documents and whether they, like the note, were blank form documents at the time she signed them.

## PROCEEDINGS BELOW

Nusor filed a Chapter 13 petition on June 10, 1988. Shortly thereafter, Parkhill filed a proof of claim based on the promissory note and the deed of trust securing the note. On September 30, 1988, Nusor initiated this adversary proceeding pursuant Bankruptcy Code § 548(a)(2) to avoid Parkhill's deed of trust lien securing the note, and after discovery was completed, Nusor moved for summary judgment. Parkhill filed, *inter alia*, a third party complaint for indemnification against Best and the real estate broker whose license was used.

The trial court granted Nusor summary judgment on September 25, 1989. In its Findings of Facts and Conclusions of Law, the court held that the Installment Note was not a negotiable instrument for the following reasons:

(a) The name of the maker of the Note is defective. Where the Note provides for the name of the promissor, that space is filled in with the following: "I, the undersigned, Irene Vazquez Nusor, a married woman, as her sole and separate property." Said language does not constitute the name of a maker;

(b) The Note provides on its face as follows: "This note is a junior to a first deed of trust of record." the sentence has no English meaning. This does not in and of itself make the Note not negotiable but lends weight to other factors;

(c) The form in which the Note is made by which it provides to pay Best Financial Consultants, a California Sole Proprietorship, or order, does not have an adequate form to make the Note a negotiable note....

The court held that because the note is non-negotiable, Parkhill could not be a holder in due course. Further, it held that Nusor's "defenses of fraud, misrepresentation and failure of consideration to the enforceability of the Installment Note are valid and enforceable" against Parkhill, and it voided both the deed of trust in favor of Best and the assignment of deed of trust to Parkhill. Finally, it allowed Parkhill a general, unsecured claim of $5,997.25.

## ISSUE

There are three principal issues on this appeal, all of which involve the application of the Commercial Code: (a) whether the Installment Note is a negotiable instrument, (b) whether Parkhill is a holder in due course, and (c) whether Parkhill, even as a holder in due course, is insulated from Nusor's defenses against the enforceability of the note.

## STANDARD OF REVIEW

■ This Court reviews a trial court's decision to grant summary judgment in an adversary proceeding de novo. *In re The Two "S" Corporation*, 875 F.2d 240, 242 (9th Cir.1989). In deciding whether to affirm, this Court applies the standard contained in Fed.R.Civ.P. 56(c) and Fed.R.Bankr.P. 7056(c), *i.e.*, whether "after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law." *In re Pioneer Technology, Inc.*, 107 B.R. 698, 700 (9th Cir. BAP 1988).

## DISCUSSION

A. *The Negotiability of the Installment Note*

The negotiability of a promissory note is governed by Commercial Code § 3104 which states:

(1) Any writing to be a negotiable instrument within this division must

(a) Be signed by the maker or drawer; and

(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this division; and

(c) Be payable on demand or at a definite time; and

(d) Be payable to order or to bearer.

(2) A writing which complies with the requirements of this section is ...

(d) a "note" if it is a promise other than a certificate of deposit.

Whether a particular note conforms to these requirements is "based solely by reference to the four corners of the instrument." 4 Hawkland & Lawrence, Uniform Commercial Code, § 3–104.06 at 53 (1984). For the reasons set forth below, we disagree with the trial court's ruling that the Installment Note was not a negotiable instrument.

■ The trial court found that the Installment Note has two principal defects: (1) it does not contain the name of a maker, and (2) its "form" is not "adequate."[2] First, with respect to the note's identification of the maker, the statute requires only that the note "[b]e signed by the maker." There is no dispute that Nusor's signature appears at the bottom of the note.[3] The fact that Nusor is described as "a married woman, as her sole and separate property," regardless of the phrase's opacity, does not destroy the note's negotiability.

■ Second, the court does not explain why it found the note's form inadequate. Apparently, it accepted Nusor's argument, repeated in her brief on appeal, that the note omits the requisite unconditional promise or order by a maker because there is a punctuation mark (a period) after the identification of Nusor and before the promise to pay. The note's first line reads: "[i]n installments and at the times hereinafter stated, for value received I the undersigned, Irene Vazquez–Nusor, a married woman as her sole & separate property."

The second line begins "promises to pay to Best Financial Consultants, a California Sole Proprietorship or order...." Nusor argues that since the name of the maker is not identified at the beginning of the second line, which begins with the verb "promises," the note fails to meet the requirements of Commercial Code § 3104.

Nusor points to Official Comment 5 to Uniform Commercial Code § 3104 which provides that courts should find against negotiability in cases where there is not at least a "clear equivalent" for the language required by the statute.[4] In this case, however, we find that the Installment Note satisfies this "clear equivalence" test. The inadvertent placement of the period does not undermine the note's negotiability. *See Cooperatieve Centrale Raiffeisen–Boerenleenbank v. Bailey,* 710 F.Supp. 737, 739 (C.D.Cal.1989) (where the district court rejected "an overly technical standard" under § 3104 and disavowed the need for the use of "magic words," holding that the words "pay to the order *to* " rather than "pay to the order *of*" did not render a note non-negotiable.) The trial court's holding here results in such an "overly technical" test for negotiability.

B. *Parkhill's Status as Holder in Due Course*

■ Whether Parkhill is a holder in due course turns on Parkhill satisfying the re-

---

2. The trial court also indicated that certain language on the note concerning the junior status of the note, while not in itself a basis for finding the note non-negotiable, has "no English meaning that I've been able to ascertain" and "lends weight to the other factors." We do not agree that this language has no meaning. Although it is true that the note was "junior" to a second as well as a first deed of trust, such imprecision does not render the wording unintelligible.

3. In fact, the Commercial Code is flexible on what constitutes a proper signature. It provides that "any symbol executed or adopted by a party with the present intention to authenticate a writing" is sufficient. § 1201(39). *See also* § 3401 ("A signature is made by use of any name, including any trade or assumed name ... or by any word or mark used in lieu of a written signature").

4. Official Comment 5 to the U.C.C. § 3104 provides:

This Article omits the original Section 10, which provided that the instrument need not follow the language of the act if it "clearly indicates an intention to conform" to it. The provision has served no useful purpose, and it has been an encouragement to bad drafting and to liberality in holding questionable paper to be negotiable. The omission is not intended to mean that the instrument must follow the language of this section, or that one term may not be recognized as clearly the equivalent of another, as in the case of "I undertake" instead of "I promise," or "Pay to holder" instead of "Pay to bearer." It does mean that either the language of the section or a clear equivalent must be found, and that in doubtful cases the decision should be against negotiability.

quirements of Commercial Code § 3302.[5] Nusor argues that Parkhill fails to meet this standard because of the note's clumsy draftsmanship and its exceptional rate of return (*i.e.*, the maturation of the discounted note 21 days from the date of the assignment) gave Parkhill at least constructive notice of Nusor's defenses. Nusor states that these "irregularities . . . would certainly cause a reasonably prudent person to question the note's validity and thereby be placed on notice." We agree and hold that Parkhill was not a holder in due course.

The leading California case on the issue of notice under the Commercial Code is *Sun 'N Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 582 P.2d 920, 148 Cal.Rptr. 329 (1978). In that case, a dishonest employee obtained numerous signed checks made payable to the defendant collecting bank, fraudulently increased the amounts, and then deposited the checks in her personal account. The employer sued the collecting bank for, among other things, breach of warranties against material alteration under Articles 3 and 4 of the Commercial Code. The bank defended in part by asserting that it was a holder in due course and therefore not bound by these warranties. The California Supreme Court rejected the bank's holder in due course defense and, relying upon Commercial Code §§ 1201(25)(c) and 3304(1), found that the irregular manner by which the checks were negotiated (*i.e.*, they were payable to the bank but deposited in the personal account of an employee) gave the bank sufficient notice of the employee's embezzlement.

Commercial Code § 3304(1) sets forth the conditions under which "irregularities" in the instrument puts the holder on notice:

(1) The purchaser has *notice of a claim or defense* if (a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or *is otherwise so irregular as to call into question its validity, terms or ownership* or to create an ambiguity as to the party to pay;

. . .

(Emphasis added). The term "notice" is further defined in § 1201(25)(c) which provides that one has notice of a fact when "[f]rom all the facts and circumstances known to him at the time in question he or she has *reason to know* that it exists." (Emphasis added).

In *dictum,* the California Supreme Court in *Sun 'N Sand* criticized the "restrictive view" of notice under the Commercial Code as one which improperly blurs the distinction between the elements of lack of notice and good faith. Under this "restrictive view," the alleged holder in due course has notice of a claim or defense only when it is so negligent in its response to "suspicious circumstances" that its taking of the instrument would "amount to bad faith." *Id.* 21 Cal.3d at 697 n. 21, 582 P.2d at 938 n. 21, 148 Cal.Rptr. at 347 n. 21.[6] The Court stated that the "reason to know" standard of § 1202(25) involves "an objective notion of notice," based on what is "commercially reasonable." *Id.* (citing, *inter alia, Kaw Valley State Bank and Trust Co. v. Riddle,* 219 Kan. 550, 549 P.2d 927 (1976); 2 Benders U.C.C.Serv., Hart & Willier, COMMERCIAL PAPER (1976) § 11.05[2] ).

---

5. Commercial Code § 3302 provides in part:
   (a) A holder in due course is a holder who takes the instrument
      (a) For value; and
      (b) In good faith; and
      (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

6. This "restrictive view" appears to have its origins in a superceded Negotiable Instruments Law provision, previously found at California Civil Code § 3137. This section provided:
   To constitute notice of an infirmity in the instrument or defect in the title of a person to

whom it is negotiated must have had actual knowledge of such facts that his action in taking the instrument amounted to bad faith. As a consequence, there is a line of outdated California cases which hold that notice of a defense will be found only when "the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith." *Christian v. California Bank,* 30 Cal.2d 421, 425, 182 P.2d 554, 557 (1947); *see also Cameron v. Security First National Bank,* 251 Cal.App.2d 450, 458, 59 Cal.Rptr. 563, 568 (1967).

In this case, Parkhill did not seek interest income in the usual manner. She answered a newspaper advertisement. Presumably, after communicating with Best, she calculated the rate of return. The content of the Installment Note, particularly its extraordinarily favorable terms, clearly indicated that this was an unusual type of commercial transaction. For the discounted price of $13,812.19, Parkhill was assigned a note designed to provide her in 21 days (on December 23, 1987) the face value of the Installment Note ($14,986.61) plus 18% per annum interest that would accrue over the term of the note. Thus, Parkhill's total anticipated return was $1,624.02. This amount represents the equivalent of an annual interest rate of over 203%, a return far in excess of the reasonable expectations of any investor who in good faith seeks a favorable rate of return. In addition, we find it significant that Parkhill made no inquiry about the note's origins notwithstanding its manifestly unusual terms. *See Stewart v. Thornton*, 116 Ariz. 107, 109, 568 P.2d 414, 416 (1977) (holder in due course protection "cannot be used to shield one who simply refuses to investigate when the facts known to him suggest an irregularity concerning the commercial paper he purchases.")

The imprecise form of the Installment Note, combined with its exorbitant rate of return, were sufficient to divest Parkhill of holder in due course status and to subject her to Nusor's defenses against the note's enforceability. *See Salter v. Vanotti*, 42 Colo.App. 448, 599 P.2d 962 (1979) (where notice was imputed to a purchaser who made no effort to inquire as to possible defenses notwithstanding a 40% discount in the cost of promissory note and a contract provision giving the maker of the note the right to rescind the agreement).

Accordingly, we hold that Parkhill is not a holder in due course and is therefore subject to Nusor's defenses of fraud in the inducement and failure of consideration.

### C. *Parkhill's Insulation from Nusor's Defenses*

Because we find that Parkhill is not a holder in due course, it is not necessary to reach the parties' conflicting contentions as to whether a holder in due course is insulated from Nusor's fraud claims against Best.

■ With respect to Nusor's defenses, the evidence in this record consists of Nusor's uncontradicted declaration setting forth Best's misrepresentations. Although the record in this area is not greatly developed, we find that it is sufficient to support the trial court's conclusion that Best committed fraud against Nusor. We therefore need not review the court's holding that Nusor's defense of lack of consideration is also valid and enforceable.

■ In sum, we find that Nusor's obligations under the Installment Note are null and void. However, we do not agree with the trial court's determination that the deed of trust, originally conveyed to Best and subsequently assigned to Parkhill, should also be nullified. Thus, Parkhill should be allowed a secured, rather than an unsecured, claim in the amount of $5,977.25. This sum represents the monies which Best had previously paid on Nusor's behalf to Zenith Home Loan, the second lienholder on the property.

### CONCLUSION

We affirm the trial court's decision in most respects but on different grounds. *City of Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir.1985) (an appeals court may affirm on any ground fairly supported by the record); *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 829 n. 5 (9th Cir. BAP 1986). We find that the Installment Note was a negotiable instrument. However, Parkhill had constructive notice of Nusor's defenses and therefore she is not entitled to holder in due course status. We reverse the judgment below to the extent that we restore to Parkhill the assigned deed of trust and allow her a secured claim in the amount of $5,997.25.