Opinion
 

 VOGEL (Miriam A.), J.
 

 The interesting issue in this case is whether a check indorsed “for deposit only” without further limitation (“X, for deposit
 
 *1057
 
 only”) can be deposited only into the indorser’s unidentified account or whether it can be deposited into anybody’s account at any bank. In the published portion of this opinion, we explain that this indorsement is both restrictive (the check must be deposited and cannot otherwise be negotiated) and blank (to the extent that it does not identify the person for whose benefit the check must be deposited). “X, for deposit only” is to a deposit as is a blank payee to a signed check. For this reason (and others explained in the unpublished portion of this opinion), we affirm an order of dismissal entered after a demurrer was sustained without leave to amend.
 

 Facts
 
 [1]
 

 On December 6, 1993, Max Wolf died. Within days, Sherri Spencer (later appointed Wolf’s executrix) hired Angela Wallace, a lawyer, to initiate probate proceedings. Instead, Wallace allegedly converted assets from Wolf’s estate, “forging [Wolf’s] signature ... to obtain funds held in deposit accounts located” at three banks, as follows:
 

 On December 13, 1993, Home Savings of America issued “a cashier’s check . . . payable by . . . Home [Savings] to ‘Max or Katherine Wolf’ in the amount of $75,926.90 . . . .” On December 15, Wallace deposited this cashier’s check to her client trust account at Sterling Bank. The check (issued after Wolf’s death) purports to be indorsed (by hand) by Max Wolf, “For Deposit Only,” then indorsed again (by indorsement stamp) by Wallace for deposit to her Sterling Bank client trust account. On December 16, Home Savings paid “the full amount of its cashier’s check” to Sterling Bank.
 

 On December 21, 1993, American Savings Bank issued a cashier’s check payable by American Savings to Max Wolf in the amount of $79,747.80. On December 22, Wallace deposited this cashier’s check to her client trust account at Sterling Bank. This check was indorsed in the same manner as the Home Savings check. On December 23, American Savings paid “the full amount of its cashier’s check” to Sterling Bank.
 

 On December 22, 1993, Great Western Bank issued a cashier’s check payable by Great Western to Max Wolf in the amount of $51,264.39. On December 22, Wallace deposited this cashier’s check to her client trust account at Sterling Bank. This check was indorsed in the same manner as the Home Savings and American Savings checks. On December 23, Great Western paid “the full amount of its cashier’s check” to Sterling Bank.
 

 
 *1058
 
 Based on these transactions, Spencer (as Wolf’s executrix) sued Wallace, Sterling Bank, the issuing banks and others, alleging that “Defendants have failed and refuse[d] to account to [her] for the monies taken . . . .” As against Sterling Bank (the only defendant before us on this appeal),
 
 [2]
 
 Spencer alleged causes of action for conversion, “damages due to unauthorized or forged drawer’s and endorser’s signature,” “breach of restrictive endorsement” and a common count for money had and received.
 
 [3]
 
 Over Spencer’s opposition, Sterling Bank’s demurrers were sustained without leave to amend. Spencer appeals.
 

 Discussion
 

 I.
 

 Spencer contends that, in light of the indorsements (“Max Wolf ‘for deposit only’ ”), she has a cause of action for “breach of a restrictive indorsement” against Sterling Bank. We disagree.
 

 A.
 

 Checks, including cashiers’ checks, are “negotiable instruments” covered by Division Three of the California Commercial Code, section 3101 et seq.
 
 [4]
 
 (§ 3104, subds. (c), (f).)
 
 [5]
 
 A “cashier’s check” is a draft
 
 [6]
 
 with respect to which the drawer
 
 [7]
 
 and drawee
 
 [8]
 
 are the same bank or branches of the same
 
 *1059
 
 bank. (§ 3104, subd. (g).)
 
 [9]
 
 A check is “issued” when the drawer first delivers it “for the purpose of giving rights on the instrument to any person.” (§ 3105, subd. (a).) For our purposes, a “depositary bank” is “the first bank to take an item . . . .” (§ 4105, subd. (2).)
 

 As relevant, an “indorsement” is a signature that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating
 
 [10]
 
 the instrument or (2) restricting payment of the instrument. (§ 3204, subd. (a).) An “indorser” is a person who makes an indorsement. (§ 3204, subd. (b).) If an indorsement is made by the holder of an instrument and the indorsement identifies a person to whom it makes the instrument payable, it is a “special indorsement.” When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. (§ 3205, subd. (a).) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a “blank endorsement.” When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed. (§ 3205, subd. (b).) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable. (§ 3205, subd. (c).)
 

 According to paragraph 2 of the Uniform Commercial Code comment to section 3205, “[a] blank indorsement is usually the signature of the indorser on the back of the instrument without other words. ... A ‘restrictive indorsement’ described in Section [3206] can be either a blank indorsement or a special indorsement. ‘Pay to T, in trust for B’ is a restrictive indorsement. It is also a special indorsement because it identifies T as the person to whom the instrument is payable.
 
 ‘For deposit only’ followed by the signature of the payee of a check is a restrictive indorsement. It is also a blank indorsement because it does not identify the person to whom the instrument is payable.”
 
 (Com., 23B West’s Ann. Cal. U. Com. Code,
 
 supra,
 
 par. 2, foil. § 3205, p. 31, italics added.) As to a “blank indorsement,” the “result is analogous to that of a check in which the name of the payee is left blank by the drawer. In that case the check is payable to bearer.”
 
 (Ibid.)
 

 The plain language of this statutory scheme compels the conclusion that the indorsements in Wolf’s name “for deposit only,” while restrictive, were
 
 *1060
 
 also blank indorsements because they did not specify where or for whose benefit the checks were to be deposited. (Cf.
 
 Nordin
 
 v.
 
 Eagle Rock State Bank
 
 (1934) 139 Cal.App. 584, 593-594 [34 P.2d 490]; and see
 
 Cameron
 
 v.
 
 Security First Nat. Bank
 
 (1967) 251 Cal.App.2d 450, 457-458 [59 Cal.Rptr. 563]; contra
 
 LaJuntaState Bank
 
 v.
 
 Travis
 
 (Colo. 1986) 727 P.2d 48,54-55.)
 
 [11]
 
 Accordingly, Sterling Bank’s acceptance for collection of the three cashiers’ checks from Wallace for deposit to her trust account was not a violation of a restrictive indorsement.
 

 B.
 

 We reject Spencer’s contention that Sterling Bank’s acceptance of the cashiers’ checks was “inconsistent with the indorsement” within the meaning of section 3206. Under subdivision (c)(2) of section 3206, “[i]f an instrument bears an indorsement
 
 ... in blank or to a particular bank using the words ‘for deposit, ’ for collection, ’ or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account,
 
 ... [a] depositary bank that . . . takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or
 
 applied consistently with the
 
 indorsement.” (Italics added.) Wolf’s indorsements did not use any words “indicating a purpose of having the instruments] collected by a bank for the indorser or for a particular account” as required to create liability under subdivision (c)(2) of section 3206. The restriction was in blank, permitting a deposit to any account, at any bank.
 

 Spencer cannot state a cause of action for breach of a restrictive indorsement.
 

 II., III.
 
 *
 

 
 *1061
 
 Disposition
 

 The order of dismissal is affirmed. Sterling Bank is entitled to its costs of appeal.
 

 Spencer, P. J., and Ortega, J., concurred.
 

 [1]
 

 On this appeal from an order of dismissal entered after demurrers were sustained without leave to amend, we assume the truth of all well-pleaded facts.
 
 (Wolfe
 
 v.
 
 State Farm Fire & Casualty Ins. Co.
 
 (1996) 46 Cal.App.4th 554, 559 [53 Cal.Rptr.2d 878].)
 

 [2]
 

 The issuing banks demurred at or about the same time as Sterling Bank, and their demurrers were also sustained without leave to amend. Spencer’s notice of appeal is limited to Sterling Bank.
 

 [3]
 

 On this appeal, Spencer offers no argument to support her common count, thereby conceding that this cause of action was properly dismissed.
 
 (Rossiter
 
 v.
 
 Benoit
 
 (1979) 88 Cal.App.3d 706, 710-711 [152 Cal.Rptr. 65].)
 

 [4]
 

 Unless otherwise stated, all section references are to the California Commercial Code.
 

 [5]
 

 “ ‘Check’ means (1) a draft, other than a documentary draft, payable on demand and drawn on a bank, (2) a cashier’s check or teller’s check, or (3) a demand draft. An instrument may be a check even though it is described on its face by another term, such as ‘money order.’ ” (§ 3104, subd. (f).)
 

 [6]
 

 “An instrument is a ‘note’ if it is a promise and is a ‘draft’ if it is an order. If an instrument falls within the definition of both ‘note’ and ‘draft,’ a person entitled to enforce the instrument may treat it as either.” (§ 3104, subd. (e).) “Order” means a written instruction to pay money signed by the person giving the instruction. (§ 3103, subd. (a)(6).) According to paragraph 4 of the Uniform Commercial Code comment to section 3104, “[t]he term ‘draft,’ defined in subsection (e), includes a ‘check’ which is defined in subsection (f).’’ (Com., 23B West’s Ann. Cal. U. Com. Code (1998 pocket supp.) par. 4, foil. § 3104, p. 9.)
 

 [7]
 

 The “drawer” is the person who signs or is identified in a draft as the person ordering payment. (§ 3103, subd. (a)(3).)
 

 [8]
 

 The “drawee” is the person ordered in a draft to make a payment. (§ 3103, subd. (a)(2).)
 

 [9]
 

 When a bank issues a “cashier’s check,” it promises the purchaser that the check will be paid from the bank’s resources (not from the purchaser’s account) upon presentation.
 
 (Jerman
 
 v.
 
 Bank of America
 
 (1970) 7 Cal.App.3d 882, 887 [87 Cal.Rptr. 88].)
 

 [10]
 

 “Negotiation” means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder. (§ 3201, subd. (a).)
 

 [11]
 

 In
 
 Cameron
 
 (decided before enactment of California’s Uniform Commercial Code— Negotiable Instruments [Stats. 1992, ch. 914, § 6, p. 4346 et seq. ]), we noted that, although there was “some question as to the restrictive nature of the words ‘For Deposit’ on commercial paper [citation], such words are a common form of restrictive endorsement. [Citation.] If the words ‘For Deposit Only’ should be regarded as restricting the bank to collecting the proceeds of the check for deposit, it is to be noted that there is no direction in said indorsement as to the account in which the proceeds were to be deposited. (Cf.
 
 Nordin
 
 v.
 
 Eagle Rock State Bank,
 
 [supra,] 139 Cal.App. 584, 589 . . . , wherein the endorsement was ‘For deposit in Bank to order of C. O. Nordin’; and
 
 Christian
 
 v.
 
 California Bank
 
 [(1947)] 30 Cal.2d 421, 422 . . . , wherein the endorsement was ‘Pay to order of 303 Bank of America 303 Trust and Savings Association S & R Produce Co.’)”
 
 (Cameron
 
 v.
 
 Security First Nat. Bank, supra,
 
 251 Cal.App.2d at p. 457.)
 

 *
 

 See footnote,
 
 ante,
 
 page 1055.